SAMUEL WOODFORD, plaintiff in error, v. ELIJAH McCLENA-
HAN, JUN. defendant in error.

*Error to Stark.*

In an action of *assumpsit* upon a promissory note given for a clock, written ev-
idence of a warranty was offered, signed by one claiming to be the agent of
the owners, thus: "W. H. Haywood, for Bishop Higley & Co." The plain-
tiff objected to the evidence, when the defendant called a witness, who testi-
fied that he had purchased a clock, given a note and received a similar
warranty from a person of the name aforesaid; that he never saw him write
his name but once, and from his knowledge of the handwriting, thus ac-
quired, he believed it to be his handwriting; and that he stated to witness at
the time that he was selling clocks for that firm. The instrument was then
read to the jury, the plaintiff still objecting: *Held*, that the evidence was
proper to go to the jury.

Private writings may be proved, *first*, by a witness who has seen letters or doc-
uments purporting to be in the handwriting of the party, and, afterwards, has
personally communicated with him respecting them, or has acted upon them,
the party having known and acquiesced in such acts; and *second*, by one
who has seen the party write, although he has seen him write but once.

It is a well settled principle of law, that an agent, while acting within the legiti-
mate sphere of his authority, can bind his principal, and do whatever is neces-
sary to carry out and perfect the business of the agency. So, where one sold, as
the agent of others, a clock, received a note for the payment,—which note
was received and negotiated by them,—and gave a written warranty, it was
held, that, nothing appearing to the contrary, his acts were within the scope
of his authority.

*Assumpsit*, in the Stark Circuit Court, originally brought
by the appellant against the appellee, before a justice of the
peace, where the cause was tried by a jury, who found for
the defendant. The plaintiff appealed to the Circuit Court,
and at the October term 1845, the Hon. John D. Caton pre-
siding, the cause was again submitted to a jury with a simi-
lar result.

The evidence is fully stated in the Opinion of the Court.

The cause was submitted in this Court upon the written
arguments of counsel.

J. *Manning*, for the plaintiff in error.

It is sufficiently well settled, that a witness, having seen a
person write once, may be called to give his opinion as to

Woodford *v.* McClenahan.

the handwriting of that person; but this pre-supposes that he knows this person to be the same person whose handwriting is to be proved; that is, in all such cases, there is a question of identity. This identity, it is necessary to prove. 1 Greenl. Ev. 644, § 575, and cases there cited. Now, in this case, there was no evidence of this identity. The witness had seen a man, who called himself Haywood, write once. And there is no evidence that this person, who called himself Haywood, was the person whose handwriting it was proposed to prove.

There is no legal evidence as to the name. The declarations of Haywood, admitting he was an agent of Bishop Higley & Co. at another time than the time when the contract was made with McClenahan, were not evidence against the plaintiff. So the proper evidence is this: The witness saw a man write his name W. H. Haywood, and thereupon, it is attempted to charge the plaintiff with the acts and contracts of a person who signs his name, W. H. Haywood.

This evidence is insufficient to warrant the introduction of this writing in evidence. For this error in permitting this writing to be read to the jury without further proof of the agency and handwriting of Haywood, the case should be reversed.

*C. K. Harvey,* for the defendant in error.

The only questions in this case are, 1. Is there sufficient evidence of the handwriting of the agent Haywood? 2. Is there evidence of Haywood's agency?

The bill of exceptions does not profess to contain all the evidence, but the handwriting was proved by a witness, (Wall,) who had seen Haywood write. This is sufficient. 1 Greenl. Ev. 646, § 577.

This is evidence of Haywood's agency. It was proved that Haywood sold to Wall a clock, as the agent of Bishop Higley & Co., and gave a warranty like the one given to the defendant; that at the time he (Haywood,) was peddling or selling clocks for Bishop Higley & Co., and that about this time the defendant bought the clock in controversy.

A power to sell includes a power to warrant. Story's Agency, 59; *Hunter* v. *Jameson*, 6 Iredell, 252.

The possession of the clock was sufficient evidence of a power to sell, even if there had been no direct evidence, (Story's Agency, 84, § 93,) even where the agent swore he had no such power. *Andrew* v. *Kneeland*, 6 Cowen, 354; 2 Greenl. Ev. 48.

The note given on the sale of the clock and the guaranty given at the same time, constitute one contract. Bishop Higley & Co. cannot repudiate a part of this contract and affirm the residue. They cannot affirm the note and repudiate the guaranty. Story on Agency, 245, § 250; also, page 252.

The Opinion of the Court was delivered by

DENNING, J. This was a suit originally instituted before a justice of the peace of Stark county by Samuel Woodford, assignee of Bishop Higley & Co., against Elijah McClenahan on a sealed instrument. The case was tried by a jury in the justice's court, who gave a verdict for the defendant, from which Woodford took an appeal to the Circuit Court of said county.

At the October term of the Stark Circuit Court 1845, the case was again submitted to a jury, and they returned a verdict in favor of the defendant, upon which judgment was entered, and the plaintiff brings the case to this Court by writ of error.

The bill of exceptions herein shows, that upon the trial of the cause, the plaintiff, to maintain the issue on his part, read in evidence to the jury a note, as follows:

"$30.   On or before the 25th day of December 1842, I promise to pay Bishop Higley & Co. or bear thirty dollars without defalcation or discount for value received with — per cent interest, witness my hand and seal this 4th day of August 1841 Stark County Illinois.

Elijah McClenahan.   Seal."
on which was the following indorsement, to wit, "We assign the within note to Samuel Woodford for value recd Nov. 20th 1842.

Bishop Higley & Co."

There was a further indorsement of a credit of six dollars and fifty cents on the note, and upon this evidence the plaintiff rested his case.

The defendant then offered to read in evidence to the jury an instrument of writing, purporting to be a warranty, signed by W. H. Haywood for Bishop Higley & Co., as follows, to wit: "This certifies that I this day sold a clock to Elijah Mc-Clenahan which I insure to run, and keep good for twelve months with proper care, in default thereof I agree to make it by repairing, or put another in its place witness my hand and seal this 4th day of August 1841 Stark County Illinois.

W. H. Haywood for

Bishop Higley & Co."

To the reading of which, as evidence to the jury, the plaintiff objected. The defendant then proved by Dexter Wall, a witness sworn on the trial, that he bought a clock of Bishop Higley & Co., by W. H. Haywood, or a man who went by that name, about the same time that the defendant bought the clock in controversy; and that he (witness) gave a note like the one sued on, and that Haywood gave him a warranty like the one above set forth; that witness saw Haywood write the warranty he received; that he saw him write but that one time; that, from the knowledge of the handwriting of Haywood, he thought that the signature thereto was the handwriting of Haywood; that Haywood stated to witness at the time that he was selling or peddling clocks for Bishop Higley & Co. The plaintiff again objected to the introduction of the warranty as evidence before the jury, but the Court overruled the objection, and the instrument was read to the jury. To the decision of the Court in overruling of the objection, the plaintiff excepted.

There was some other testimony tending to show that the clock did not keep correct time, &c. But the bill of exceptions does not profess to contain all the evidence in the case.

There are several errors assigned, but we deem it unnecessary to notice but two of them, as they embrace all the others.

It is contended, *first*, that the Court erred in permitting the instrument purporting to be a warranty, to be read as evidence to the jury without further proof of the handwriting of Hay-

Woodford *v.* McClenahan.

wood who executed it. Wall, a witness called by the defendant, testified that he had purchased a clock from W. H. Haywood, as the agent of Bishop Higley & Co., and gave a note similar to the one given by McClenahan, and received from Haywood a warranty of the clock, of the same nature of the one received by McClenahan; that he saw Haywood write the last named warranty, but had never seen him but the one time, and, from his knowledge of Haywood's handwriting, he thought the signature to the warranty proposed to be read in evidence, was the handwriting of Haywood. At the time Haywood executed and delivered the warranty to the witness, he could have had no motive to disguise his handwriting; he was acting in the ordinary course of his business.

The law points out two modes of proving private writings in order to enable parties to use them as evidence. First, when a witness has seen letters or documents purporting to be the handwriting of the party, and having afterwards personally communicated with him respecting them; or acted upon them as his, the party having known, and acquiesced in such acts, it is sufficient to enable the witness to give evidence in relation to the handwriting of the party, to the instrument sought to be used as evidence.

The other mode is by a witness who has seen the party write, and if the witness has seen the party write but once, he is competent to prove his handwriting. Mr. Greenleaf, in his work on Evidence, vol. 1, page 646, § 577, observes: "There are two modes of acquiring this knowledge of the handwriting of another, either of which is universally admitted to be sufficient, to enable a witness to testify to its genuineness. The first is from having seen him write. It is held sufficient for this purpose, that the witness, has seen him write but once, and then only his name." It has been also held that a witness, who had seen the defendant write his name "Mr. Sapio," was competent to prove the signature to a bill signed "L. B. Sapio." *Lewis* v. *Sapio*, 1 Mood. & Malk. 39. It has been held in New York, that a witness who had seen a person ( S. Wheeler ) put the initials of his name to a paper which was at the trial in witness' possession, was

competent to testify as to the signature of such person made in the same way, in attesting a will.  5 Johns. 144; 3 Wend. 102.   Many other cases might be cited in support of the same point.

In the case under consideration, it was proven by Wall, that he had seen Haywood write, and he was, therefore, a competent witness to prove the handwriting of Haywood, and we think that his handwriting to the warranty given to McClenahan, was sufficiently proven by said witness to authorize it to be read to the jury.

It is contended by the plaintiff's counsel in the second place, that Haywood's authority to bind Bishop Higley & Co. is not sufficiently proven, and that, therefore, the warranty should have been excluded from the jury.   It is a principle of law, well settled, that an agent while acting within the legitimate sphere of his agency, can bind his principal, and may do everything which is necessary to carry out and perfect the business of the agency.   It is then necessary to inquire whether or not Haywood was the agent of Bishop Higley & Co.   The evidence shows that Haywood sold clocks in the name of Bishop Higley & Co.; that for those clocks he took notes payable to them, and that in the case under consideration, they ratified and confirmed the acts of Haywood by taking possession of the note against the defendant, and assigning it to the plaintiff, which, we think, is sufficient evidence of his agency.   Story on Agency, 252, § 259. Haywood was allowed by Bishop Higley & Co. to assume the right of disposing of these clocks in the ordinary course of trade, and in their names, and strangers could only look to the acts of the parties, and were not bound by any private understanding that may have existed between them in relation to the extent of the agent's authority.   We are not advised how far the agent's authority extended in this case, but we are satisfied that Haywood was the agent of Bishop Higley & Co. in the vending and selling of clocks, and that, as such agent, he had the power to warrant the clocks to run and keep good unless he was expressly prohibited from so doing by his principal.   Mr. Story upon this subject re-

marks, (Story's Agency 59, § 59,) that, "upon the same ground, an agent, who is employed to procure a note or bill to be discounted, may, unless expressly restricted, indorse it in the name of his employer, and bind him by that indorsement; for he may well be deemed as incidentally clothed with this authority, as a means to effectuate the discount. So, a servant, entrusted to sell a horse is clothed by implication, (unless expressly forbidden,) to make a warranty on the sale, &c." And again, at page 91, he remarks: "upon a similar ground of incidental authority by operation of law, an authority to buy or sell goods includes the authority to execute the proper vouchers therefor; an authority "to do the needful" in respect to the fulfillment of an award carries the incidental power to prepare a release, if required by the award; an authority to superintend the building of a meetinghouse, to procure an architect, and to borrow money, if necessary, includes an authority to make the necessary contracts for the building of the meetinghouse; an authority to sell a horse includes a power to warrant him; a power to sell goods includes a power to warrant them." &c. It is, then, not shown in this case that Haywood was prohibited from warranting the clock; he did make the warranty in question; and Bishop Higley & Co. have ratified the act by accepting the note given for the clock warranted, and consequently are bound by it. Hence, there was sufficient evidence of Haywood's authority to make the warranty, and the Court decided properly in permitting it to be read to the jury.

We are unable to see anything in the errors that have been assigned in this cause which would require its reversal. The judgment of the Court below is therefore affirmed with costs.

*Judgment affirmed.*