MARILYN HASSIEPEN *et al.*, Plaintiffs-Appellants, *v.* JOHN C. MARCIN, City Clerk of the City of Chicago, *et al.*, Defendants-Appellees.

(No. 58787;

First District (1st Division)—November 18, 1974.

Morton Siegal, of Chicago (Allan Goldberg, of counsel), for appellants.

Richard L. Curry, Corporation Counsel, of Chicago (Daniel Pascale and Dennis James Stolfo, Assistant Corporation Counsel, of counsel), for appellees.

Mr. PRESIDING JUSTICE EGAN delivered the opinion of the court:

Petitions were circulated in the 7th Precinct of the 8th Ward of Chicago for a "local option" referendum on the proposition prohibiting retail sale of alcoholic liquor in that precinct. (Ill. Rev. Stat. 1971, ch. 43, par. 169.) John C. Marcin, the city clerk, certified to the Board of Election Commissioners that petitions purporting to be signed by 25% of the voters of the precinct had been filed in his office. The plaintiffs filed a complaint to contest the validity of the petitions and to enjoin the city clerk and the Board of Election Commissioners from submitting the proposition to the voters. After a hearing, the court declared the petitions valid and ordered the proposition placed on the ballot for the November, 1972, election.

There were 393 registered voters in the precinct at the last general election preceding the filing of the petitions. One hundred and twenty-two signatures were filed, and the court held that 17 signatures were invalid, leaving 105 signatures, or 6 more than were legally required. The court struck 13 signatures out of 25 from one sheet; and the entire case hinges on the correctness of the court's refusal to strike all 25. If it had, the number of valid signatures would have been reduced to 93, or 6 less than the required number.

The sheet in question contained the following jurat:

. "I, Willie Mae Riddle, do hereby certify that I reside at Number 8050 South Luella Avenue, in the 7th Precinct of the 8th Ward (as the said precinct existed as of the last General Election) in the City of Chicago, County of Cook and State of Illinois; that the signatures. of this sheet of the foregoing petition are genuine and that to the best of my knowledge and belief the persons so signing were at the time of signing said petition legal voters in the 7th Precinct of the 8th Ward of Chicago, Illinois, as the said precinct existed as

of the last General Election, and their respective residence addresses are correctly stated therein and that each signer signed the same on the date set opposite his name."

The jurat then contains the signature of Willie Mae Riddle as the signature of the person making the affidavit.

The plaintiffs presented no evidence that the persons whose names appeared on the petition did not in fact sign it and presented no evidence that the persons whose signatures appeared on the petition were not in fact residents of the precinct. Indeed, one of the plaintiffs, Marilyn Hassiepen, and Gussy Littsky testified that they had signed the petition but that it was circulated by Mae Gladney and not by Willie Mae Riddle. Willie Mae Riddle testified that she was not with Mae Gladney when Mrs. Gladney acquired the first 13 signatures on the petition, but she was the circulator at the time the last 12 persons signed.

Section 4 of article IX of the Liquor Control Act (Ill. Rev. Stat. 1971, ch. 43, par. 169) provides, in part, as follows:

"No signature shall be valid or be counted in considering the petition unless the form requirements are complied with * * *. At the bottom of each sheet of the petition there shall be added a statement, signed by a resident of the particular precinct or political subdivision of the State which is affected by the petition with his residence address, stating that the signatures on that sheet of the petition are genuine, and that to the best of his knowledge and belief the persons signing the petition were at the time of signing, legal voters in the political subdivision or precinct, as the case may be, that their respective residences are correctly stated therein and that each signer signed the petition on the date set opposite his name. * * * Whoever in making the sworn statement above prescribed shall knowingly and wilfully swear falsely, shall be guilty of perjury and on conviction shall be punished accordingly. * * *"

It is the plaintiffs' position that "since Willie Mae Riddle did not circulate the petition to 13 of the 25 signatures she could not swear under oath that the signatures were genuine or that each signer signed the petition on the date set opposite his or her name as required by statute."

■■ The plaintiffs' entire argument is bottomed on their assertion that the statute required that the petition be signed in Willie Mae Riddle's presence. As is apparent, the statute does not say so, but the plaintiffs ask us to construe the statute as though it did. Implicit in the plaintiff's argument is the proposition that a person may not, as a matter of law, attest to the genuineness of a signature unless that person was present when the signature was actually made. Such is not the law. A lay witness may swear to the genuineness of a signature and "it is not esssential that a lay witness

should have seen the party write." (King & Pillinger, Opinion Evidence in Illinois, at 233 (1942).) It has been held that a witness may testify to the genuineness of a signature if he has seen a party write on other occasions, or has seen documents recognized or admitted by the party to be in his handwriting. (*Putnam v. Wadley*, 40 Ill. 346; *Woodford v. Mc-Clenahan*, 9 Ill. 85. See also *Riggs v. Powell*, 142 Ill. 453, 32 N.E. 482.) Thus, it is theoretically possible that the circulator may have seen a voter write on a previous occasion or have seen a document acknowledged by the voter to be in his handwriting; or the voter might subsequently have acknowledged to the circulator that the signature on the petition was his. The plaintiffs, upon whom the burden of proof lies, have failed to establish that Willie Mae Riddle under no circumstances could have sworn to the genuineness of the signatures.

■■ Apart from the fatal flaw in the plaintiffs' major premise, we believe the plaintiffs' argument must fall for another reason. As noted previously, the plaintiffs would have the statute construed as though it expressly provided that the circulator was required to see the voters sign. It is a primary rule in the interpretation and construction of statutes that the intention of the legislature should be ascertained and given effect. (*Western National Bank v. Village of Kildeer*, 19 Ill.2d 342, 350, 167 N.E.2d 169.) It is the function of the legislature to prescribe the conditions of the elective process, and it is the obligation of the courts to see that they are complied with. We may not inject provisions not found in a statute, however desirable or beneficial they may be. *Droste v. Kerner*, 34 Ill.2d 495, 504, 217 N.E.2d 73.

■■ The Liquor Control Act (Ill. Rev. Stat. 1971, ch. 43, par. 94) provides that the Act "shall be liberally construed, to the end that the health, safety and welfare of the People of the State of Illinois shall be protected and temperance in the consumption of alcoholic liquors shall be fostered and promoted by sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors." A strict or technical construction of any of its provisions detrimental to the public interest should be avoided. (*Carrigan v. Illinois Liquor Control Com.*, 19 Ill.2d 230, 236, 166 N.E.2d 574.) The business of selling liquor is not favored; there is no inherent right to carry it on and it may be entirely prohibited. *Daley v. Berzanskis*, 47 Ill.2d 395, 398, 269 N.E.2d 716.

■■ Other statutes may be referred to in determining legislative intent (*Bergin v. Board of Trustees*, 31 Ill.2d 566, 574, 202 N.E.2d 489); and we note that the Election Code provides, in part, that a circulator of nominating petitions for elective office must certify that "the signatures on the sheet *were signed in [his] presence*." (Emphasis added.) Ill. Rev. Stat. 1971, ch. 46, pars. 7—10 and 10—4.

■■ It is not unreasonable to assume that the legislature intended, because of the nature of the particular business to be regulated, that the formal requirements for a local option referendum be not as stringent as those for a candidate for election to public office. For these reasons we conclude that the trial court properly entered judgment for the defendants. The judgment is affirmed.

Judgment affirmed.

BURKE and GOLDBERG, JJ., concur.