ANN E. YOUNG *et al.*, Plaintiffs-Appellants, *v.* JOHN C. MARCIN, City Clerk, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 77-791

Opinion filed November 9, 1978.

Morton Siegel, of Chicago, for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale, Marsile J. Hughes, and Robert R. Retke, Assistant Corporation Counsel, of counsel), for appellee John C. Marcin.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The central issue in this case is whether a person seeking signatures for a petition to have a referendum concerning the sale of liquor must request a resident to produce identification before signing the petition. We hold that it is not required and uphold the trial court's order declaring the petitions valid.

During the summer of 1976, petitions were circulated in the 2d Precinct of the 50th Ward of Chicago. The petitions sought to have the question whether the sale at retail of alcoholic liquors for consumption on the premises should be banned be put on the ballot at the next general election, to be held November 2, 1976. Thirteen sheets containing 248 signatures were filed with the city clerk on August 27, 1976. The circulators of these sheets were Richard H. Dorband (Sheets 1-3), Roy S. Schlagman (Sheets 4-6), Jacqueline Dorland (Sheets 7-10), and Charles W. Hill (Sheets 11-13). The plaintiffs, all registered legal voters of the 2d Precinct of the 50th Ward, filed a petition contesting the validity of the petitions filed with the city clerk. After examination and report by a special commissioner, and a hearing before the trial judge, it was ruled that 86 signatures were invalid. Since that left 162 valid signatures, and since under the statute (Ill. Rev. Stat. 1975, ch. 43, par. 167), only 124 valid signatures were needed, the court ordered the questions put on the November ballot.

The appellants contend:

1. That Hill's testimony was not credible (a) because he conceded he did not obtain the first three signatures on Sheet 11, stating that Richard H. Dorband obtained them, which Dorband denied, and (b) because, as Hill himself testified, he did not require proof of identity before obtaining signatures. Therefore, they contend, the court erred in refusing to strike the signatures on Sheets 11, 12 and 13 in their entirety.

2. That Schlagman's testimony was not credible (a) because, like Hill, he did not require proof of identity before obtaining signatures; (b) because he admitted filling in certain of the addresses, precinct designations and completing the dates and (c) because he admitted he did not see two persons sign in his presence. For these reasons, they argue, the court erred in allowing any of the signatures on his sheets.

3. That three other signatures were improperly allowed since the names of two of the signers were not on the 1974 poll sheet and the third did not appear in the same form. It is obvious, however, that this last issue is immaterial. The appellants must prove that 39 signatures held valid by the trial court should in fact have been held invalid. If either or both of

the appellants' first two contentions are upheld, they have met that burden; if, on the other hand, those contentions are overruled, it is immaterial whether these three signatures are upheld or not. Accordingly, we need not rule on this contention.

At the hearing before the trial judge, the appellants called three of the four circulators as witnesses. The fourth, Jacqueline Dorland, was in the hospital and unable to testify. No other witnesses were called, although the special commissioner gave a summary of his report.

Charles Hill testified that he had circulated Sheets 11, 12 and 13 of the petition, and had obtained all the signatures on the sheets except the first three on Sheet 11. He believed Richard Dorband had obtained those (this was denied by Dorband). He testified that, taking the poll sheet, he had gone to the various addresses, checked the names on the mailboxes against his poll list of registered voters to identify the signers, knocked on the doors, asked the persons their names and obtained their signatures, and saw all persons sign their names. He had asked for no other identification. The only signatures he had seen before were those of his wife, stepson, mother and his own, all of which appeared on Sheet 11. He did not fill in any addresses or dates on the sheets.

Roy Schlagman, who obtained the signatures for Sheets 4-6, testified that he followed the same procedures as had Hill, and like Hill did not ask for special identification. All the persons who signed the three sheets signed in his presence, except the Hefters. Rose Hefter did not want to open the door so he passed the petition through the chained door. Once she and Irving Hefter signed the sheet, she passed it back to him. Also, he filled in a few addresses and a few of the 76's on the date on Sheet 4.

■■ ■ It is obvious that the appellants err in contending that the issue is one of credibility. To begin with, as the appellee points out, Hill and Schlagman were the appellants' witnesses and the appellants cannot now challenge the veracity of their own witnesses. (*McCray v. Illinois Central R.R. Co.* (1957), 12 Ill. App. 2d 425, 139 N.E.2d 817; *People v. Grant* (1976), 38 Ill. App. 3d 62, 347 N.E.2d 244.) Furthermore, the issue of credibility is one for the trial court, not for the reviewing court. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624; *Wyman-Gordon Co. v. Lynch Area Fire Protection District* (1977), 51 Ill. App. 3d 451, 366 N.E.2d 1055; *Smith v. Realcoa Construction Co.* (1973), 13 Ill. App. 3d 254, 300 N.E.2d 855; *Celeste Italian Foods, Inc. v. Choyce* (1972), 9 Ill. App. 3d 361, 292 N.E.2d 177.) Finally, since the burden of proof was on the appellants to prove the petitions invalid (*Hassiepen v. Marcin* (1974), 24 Ill. App. 3d 97, 320 N.E.2d 572), if the appellants impeach their sole witnesses they still have not proven the petitions invalid. Rather, accepting, as we must for the reasons just stated, the uncontradicted testimony of Hill and Schlagman, the issues clearly are:

1. Are signatures valid where the circulator fails to demand identification before the petition is signed?

2. Should all the signatures on a sheet be stricken where three of them were not obtained by the circulator?

3. Should individual signatures or even the entire sheet of signatures be stricken where the circulator

      (a) fills in a few of the addresses and dates,

      (b) permits two people to sign behind a closed door?

Section 4, article IX of the Liquor Control Act (Ill. Rev. Stat. 1975, ch. 43, par. 169), reads in pertinent part as follows:

"A petition for submission of the proposition shall be in substantially the following form:

* * *

Such petition shall consist of sheets having such form printed or written at the top thereof and shall be signed by the legal voters in their own proper persons only, and opposite the signature of each legal voter shall be written his residence address (stating the street and the house number if there be such) and the date of signing the petition. No signature shall be valid or be counted in considering the petition unless the form requirements are complied with and unless the date of signing is less than 4 months preceding the date of filing the same. At the bottom of each sheet of the petition there shall be added a statement, signed by a resident of the particular precinct or political subdivision of the State which is affected by the petition with his residence address, stating that the signatures on that sheet of the petition are genuine, and that to the best of his knowledge and belief the persons signing the petition were at the time of signing, legal voters in the political subdivision or precinct, as the case may be, that their respective residences are correctly stated therein and that each signer signed the petition on the date set opposite his name. The statement shall be sworn to before an officer residing in the county where such legal voters reside and authorized to administer oaths therein. The petition, so verified, or a copy thereof duly certified, shall be prima facie evidence that the signatures, statement of residence and dates upon the petition are genuine and true and that the persons signing the petition were legal voters of the political subdivision or precinct at the time they signed the petition. Whoever in making the sworn statement above prescribed shall knowingly and wilfully swear falsely, shall be guilty of perjury and on conviction shall be punished accordingly. Whoever forges the signature of any person upon any petition or statement provided for in this Act shall be deemed guilty of forgery and on conviction shall be punished accordingly."

## I.

■■ The appellants' first contention has already been fully answered in *Wheat v. Marcin* (1976), 42 Ill. App. 3d 253, 355 N.E.2d 777. In that case, as in this one, the circulators, using the voter registration list which gave the names and addresses of the registered voters, personally asked each person on the list to sign the petition. In general, the circulators did not ask for additional identification, but assumed that when the person answering the door identified himself as the voter on the poll list, the two were the same. Judge Dempsey, in responding to the appellants' contention, stated at 42 Ill. App. 3d 253, 256-57, 355 N.E.2d 780:

> "It is the plaintiffs' contention that the two circulators failed to exercise the caution in identifying the voter status of the petition signers as required by section 4. They argue that petition circulators should ask for more individual identification such as a driver's license or a credit card. But section 4 does not require a procedure so stringent and comprehensive. That provision centers on the mental state of the circulator and requires that the circulator sign a statement on each sheet of the petition that the 'signatures * * * are genuine, and that to the best of his knowledge and belief the persons signing the petition were at the time of signing, legal voters in the * * * precinct * * *.' The statute further provides: 'Whoever in making the sworn statement above prescribed shall knowingly and wilfully swear falsely, shall be guilty of perjury and on conviction shall be punished accordingly. * * *' Both Mrs. Seals and Mrs. McMillan signed the statement and testified that, when they did so, to the best of their knowledge and belief the signatures were genuine.
>
> The trial court believed their testimony and concluded that a circulator could reasonably presume that a person living at a certain address who identified himself as the voter on the poll sheet at that address was, in fact, that person and that a circulator had no obligation to get further identification. With this conclusion we agree."

## II.

■■ The appellants' second contention is more difficult. It is conceded that Hill did not obtain the first three signatures on Sheet 11 although he attested to all of the signatures on that page. The court struck the first three signatures as invalid. But the appellants would go further. They would have all the signatures on all three sheets attested to by Hill stricken, although there is no contention the signatures are not genuine, on the grounds that Hill's attestation is unworthy of trust. We cannot agree. Hill did testify that he had no reason to be familiar with the signatures on the sheet except his own (which was stricken as improper), his wife's, his mother's and his stepson's. Accordingly, it was improper for him to attest

to those first three signatures and they were properly stricken. (Compare *Hassiepen v. Marcin* (1974), 24 Ill. App. 3d 97, 320 N.E.2d 572, where the court ruled that the circulator could attest to the signature if he was familiar with it even though it had not been signed in his presence.) But that is no reason to strike the remaining signatures, all of which were properly obtained and properly attested to. The statute provides that one knowingly making a false oath shall upon conviction be punished for perjury. It does not provide that all proper signatures obtained by such person shall be stricken, and we shall not read in such a provision here where the few improperly attested signatures are easily separated out from the remaining much greater number of properly attested to signatures.

### III.

■■ The appellants' third contention is that Schlagman's sheets should be stricken because, in a few instances, he filled in the addresses and dates and because two persons signed behind a closed door. We find, however, that the circulator committed no error. As ruled in *Hassiepen v. Marcin* (1974), 24 Ill. App. 3d 97, 320 N.E.2d 572 the statute does not require that the circulator see the voters sign and we may not inject provisions not found in a statute, however desirable or beneficial they may be. (*Droste v. Kerner* (1966), 34 Ill. 2d 495, 217 N.E.2d 73, *appeal dismissed* (1967), 385 U.S. 456, 17 L. Ed. 509, 87 S. Ct. 612.) Likewise, the statute, while requiring that the petition be signed by legal voters in their own proper persons only and providing that anyone who forges a signature is guilty of forgery, nowhere states that the addresses and dates must be written in by the voter himself. Again, we may not inject a requirement not found in the statute, even though we might deem it desirable. (*Droste v. Kerner* (1966), 34 Ill. 2d 495, 217 N.E.2d 73, *appeal dismissed* (1967), 385 U.S. 456, 17 L. Ed. 509, 87 S. Ct. 612.) Moreover, a strict or technical construction of any of the provisions of the Liquor Control Act detrimental to the public interest should be avoided. *Hassiepen v. Marcin* (1974), 24 Ill. App. 3d 97, 320 N.E.2d 572.

For the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

JOHNSON, P. J., and SULLIVAN, J., concur.