NANCY WEED, Plaintiff-Appellant, *v.* REGIONAL TRANSPORTATION AUTHORITY, Defendant-Appellee.

First District (4th Division) No. 81—3006

Opinion filed December 30, 1982.

Richard M. Kates, of Chicago, for appellant.

Jeremiah Marsh, Michael Schneiderman, Michael M. Conway, John L. Rogers III, and Albert C. Maule, all of Hopkins & Sutter, of Chicago (Carl J. Frank, General Counsel of the Regional Transportation Authority, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

This action challenges the validity of a Regional Transportation Authority (RTA) ordinance which resulted in a passenger fare increase in the area served by the RTA. The plaintiff, Nancy Weed, brought this declaratory judgment action on her own behalf and on behalf of the class of persons who patronize the railroads within the RTA region. After cross-motions for summary judgment were presented the trial court granted summary judgment in favor of the RTA and denied summary judgment in favor of Weed. It is from this ruling that the plaintiff appeals.

The RTA is a State-created agency charged with the responsibility of operating mass transportation services in a six-county region of northeastern Illinois. The RTA's statutory authority is set forth in the RTA Act (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 701.01 *et seq.*). Section 5.01 of the RTA Act is at issue in this case and provides in pertinent part:

"(a) The Authority shall provide for and encourage participation by the public in the development and review of public transportation policy, and in the process by which major decisions significantly affecting the provision of public transportation are made.

* * *

(d) Unless such items are specifically provided for in the annual budget and program which has been the subject of public hearing, as provided in Section 4.01 of this Act, the Board shall hold public hearings at which citizens may be heard prior to the providing for or allowing, by means of any purchase of service agreement or any grant pursuant to Section 2.02 of this Act, any general increase or series of increases in fares or charges for public transportation, whether by the Authority or by any transportation agency, which increase or series of increases within any twelve months affects more than 25% of the consumers of service of the Authority or of the transportation agency; or so providing for or allowing any discontinuance of any public transportation route, or major portion thereof, which has been in service for more than a year." Ill. Rev. Stat. 1981, ch. 111²/₃, par. 705.01.

The RTA fiscal year at issue in this case ran from October 1, 1980, until September 30, 1981. In April 1980, the RTA publicized its proposed five-year program for fiscal years 1981-1985, as well as its estimated budget for 1981. In December 1980, the RTA published a revised version of the five-year program, forecasting fare increases

and service cuts due to the elimination of subsidies from the State of Illinois.

On November 22, 1980, the RTA gave public notice that it would be holding public hearings concerning a two-stage fare increase. The public advertisement advised interested persons of proposed fare increases scheduled to take effect on January 1, 1981, and August 1, 1981. The hearings were conducted at 11 different locations in the RTA region on December 11, 1980. Approximately 2,500 members of the public attended, including approximately 500 persons who offered testimony concerning the proposed fare increases.

On December 22, 1980, the RTA Board adopted an ordinance providing for a three-stage fare increase. The ordinance allowed for the same overall fare increase that was advertised prior to the public hearings but staggered the increase over three stages rather than two. Specifically, the ordinance provided for fare increases which would become effective on January 1, 1981, April 1, 1981, and August 1, 1981. On January 1, 1981, the first of the three fare increases went into effect.

The RTA Board subsequently voted to defer the April 1, 1981, fare increase because of efforts being made to obtain financing through the State legislature. However, the Illinois General Assembly adjourned its spring 1981 session on June 30, 1981, without enacting any legislation relating to RTA funding.

On July 2, 1981, the RTA Board adopted a new ordinance providing for a 12½% fare increase plus a 40% surcharge to be operative from July 6, 1981, until September 30, 1981. The fare increase and surcharge went into effect on July 6, 1981.

The plaintiff's position both at the trial level and on appeal is that the July 2, 1981, ordinance was invalid because no public hearing had been conducted prior to the enactment of the 40% surcharge. The plaintiff does not challenge the propriety of the 12½% fare increase. Specifically, the plaintiff contends that the surcharge was invalid because: (1) a public hearing specifically addressing the surcharge was never held because the December 11 public hearings were inapplicable to the subsequently adopted surcharge; and (2) the plaintiff was denied due process of law where the surcharge was adopted without a prior public hearing.

In addressing the first issue raised by the plaintiff, we find that the ordinance at issue was properly adopted pursuant to the December 11 public hearings and that the RTA Board complied with the statutory hearing requirement. Granted, the public advertisements in this case did not refer directly to a 40% surcharge; however, we find

this fact to be irrelevant for four reasons.

■ First, the statute does not require that the public advertisements specifically detail the exact amounts of the proposed increases to be discussed at the upcoming hearings. While the plaintiff is correct in stating that a public hearing must be conducted prior to the imposition of a fare increase not specifically provided for in the RTA annual budget (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 705.01(d)), we disagree with the plaintiff's contentions that we should impose a detailed public advertisement requirement. The statutory language does not require that the advertisement detail the exact amount of the proposed fare increases and this court cannot inject provisions which the legislature did not choose to include in the statute. *Droste v. Kerner* (1966), 34 Ill. 2d 495, 217 N.E.2d 73, *appeal dismissed* (1967), 385 U.S. 456, 17 L. Ed. 2d 509, 87 S. Ct. 612; *Young v. Marcin* (1978), 66 Ill. App. 3d 576, 384 N.E.2d 404.

Second, the December 11 hearings were held to discuss fare increases that were proposed to take place during the same fiscal year as the one in which the surcharge was ultimately imposed. We believe that this was adequate notice to the public under the statute. Illustratively, the December 11 hearings were heavily attended and hundreds of persons saw fit to express their opinions concerning proposed fare increases.

The third reason we believe the December 11 hearings to have been adequate to meet the public hearing requirement for the surcharge is that even if the public had been belligerently opposed to any publicized increases, the statute does not provide for any sort of public veto if the public is displeased. Rather, the RTA Board need not follow the public opinion expressed at the hearings and may consequently enact whatever fares it deems fit. Thus, where the public had already been heard on the fare increase issue and could not invalidate an otherwise lawfully adopted fare increase simply because they did not like it, we do not see where a further hearing was necessary.

The fourth and final observation that leads us to believe that a further hearing was not required is that the fares that were imposed pursuant to the July 2 ordinance were not significantly higher than those that were to become effective on August 1 under the December 22 ordinance. While the July 2 fares seem quite a bit higher than those that became effective January 1, this is because the Board voted to defer the April 1 increases while awaiting a legislative solution to the funding problem. In making this observation, we are not adopting the plaintiff's position that a hearing must be conducted whenever there is a "substantial deviation" between advertised fares

and fares that are ultimately imposed. This "substantial deviation" language is arguably derived from zoning law where citizens' private property interests are at stake (see, *e.g., Kirk v. Village of Hillcrest* (1973), 15 Ill. App. 3d 415, 304 N.E.2d 452), and we will not adopt it here where we are addressing dissimilar interests, especially where the statute is silent regarding any such requirement. Rather, we are simply observing that on December 11, the public had an adequate opportunity to respond to proposed fare increases that were very similar to those that became effective under the July 2 ordinance. We only offer this observation as further support of our conclusion that another public hearing was unnecessary.

The plaintiff's final contention on appeal is that she and her class members were denied due process of law where the surcharge was adopted without a prior public hearing specifically addressing the surcharge. We disagree. Procedural due process will only attach were liberty or property interests are at stake. Specifically, a party must have a legitimate claim of entitlement rather than a mere abstract need or desire for some benefit in order to invoke a due process hearing. (*Board of Regents v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701; see also *Spalding v. City of Granite City* (1953), 415 Ill. 274, 113 N.E.2d 567.) In the instant case, the plaintiff has no legitimate claim of entitlement to any specific fares. Rather, she may either elect to use or not to use the services of the RTA and her desire for lower fares is simply an abstract desire, not a constitutionally protectable property interest.

We find that neither the RTA Act nor the due process clause mandates an additional public hearing in this case, and we affirm the judgment of the trial court.

Affirmed.

JOHNSON, P.J., and ROMITI, J., concur.