TORBERT, Chief Justice
(dissenting).
It is undisputed that the appellees implemented the color coding plan in order to address a void that was created when the legislature authorized a presidential primary to be held approximately 90 days prior to the regular primary elections. See Code 1975, Chapter 16A of Title 17. The poll lists, provided for in Code 1975, § 17-16-14, which would identify the voters who participated in each party’s presidential primary, are to be destroyed after the time allowed by law for filing a contest to that election. Code 1975, § 17-16-25. Therefore, if a contest was filed after the regular primary election based upon a violation of the “anti-crossover” rule of the Democratic Party, there would be no record of who had voted in which party’s presidential primary.
While the intent of the defendants in attempting to provide for such a contingency may be laudable, the question to be determined is whether the defendants had authority to implement such a plan.
“Elections belong to the political branch of government, and, in the absence of special constitutional or statutory provisions, are beyond the control of judicial power.” Longshore v. City of Homewood, 277 Ala.444, 446, 171 So.2d 453, 455 (1965) (quoting 29 C.J.S. Elections § 246); accord, Sharrock v. Borough of Keansburg, 15 N.J.Super. 11, 83 A.2d 11 (App.Div.1951). We have repeatedly held that the statutes providing for election contests are to be strictly construed. Parker v. Mount Olive Fire and Rescue District, 420 So.2d 31 (Ala.1982), Perloff v. Edington, 293 Ala. 277, 302 So.2d 92 (1974). “Ordinarily provisions of an election law are mandatory if enforcement is sought before election in a direct proceeding; but after an election such provisions are directory only, in support of the result_” 29 C.J.S. Elections § 67 (1965). Phillips v. Rothrock, 194 Ark. 945, 110 S.W.2d 26 (1937). “It is the function of the legislature to prescribe the conditions of the elective process, and it is the obligation of the courts to see that they are complied with. We may not inject provisions not found in a statute, however desirable or beneficial they may be.” Hassiepen v. Marcin, 24 Ill.App.3d 97, 320 N.E.2d 572 (1974); Sharrock, supra.
It is undisputed that there is no direct statutory authority for the adoption of such a plan. Appellees argue that they had implicit authority to take steps that would help enforce the election laws, that is, the “anti-crossover” rule. Appellants argue that to hold that appellees had such implicit authority would circumvent Code 1975, § 17-7-17.
Code 1975, § 17-7-17, states:
“Any election officer or any other person who makes a copy of the poll list or any memoranda therefrom, or list of the persons voting, or the number of their ballots, or discloses the number of such voter’s ballot, shall be guilty of a misdemeanor, and upon conviction, shall be fined not less than $200.00.”
Without question, the color coding plan would create a duplicate of the information contained on the poll list. The trial judge, in support of his holding that plaintiffs failed to meet their burden of showing immediate and irreparable harm absent the granting of relief, recognized as much in concluding that the color coded list “creates no record not already required by law.” The trial court’s observation was made while the court was determining that injunctive relief was inappropriate. However, the appellants also sought a declaratory judgment.
We recently had occasion to speak to the proper construction to be given to § 17-7-17, in light of an argument advanced that compelling public interests warranted a liberal construction:
“Appellants contend that the election laws of Alabama pertaining to registration lists are confusing and outdated, and appellants set forth several reasons in support of their contention that the subject lists should be available for public inspection. Appellants contend that by *764 making the registration lists available to the public, voter fraud will be discouraged, voter lists will be easier to purge, and public disclosure of the names of registered voters not voting may in fact encourage voting.
“Regardless of the validity, or invalidity, or appellants' reasons for making the lists available for public inspection, the rule in this case, as in all cases of statutory interpretation, is that the court must ascertain and give effect to the intent of the legislature in enacting the statute. Wright v. Turner, 351 So.2d 1 (Ala.1977); Locke v. Wheat, 350 So.2d 451 (Ala.1977). If possible, such intent must be gathered from the language of the statute itself, and only when the language of the statute is ambiguous or uncertain will the court resort to considerations of fairness or policy to ascertain the legislature’s intent. Morgan County Board of Education v. Alabama Public School and College Authority, 362 So.2d 850 (Ala.1978).
“We think it obvious that a list of the names of all the registered voters in a precinct is transformed into a ‘list of the persons voting’ when, after an election, that list has been so marked as to identify every voter in the precinct who presented himself at the polling place to vote. Moreover, appellants, in effect, concede that the registration lists they seek are in fact ‘lists of the persons voting.’ In their brief, appellants argue that ‘the only information that can be gleaned from an official registration list would be the names of those persons who presented themselves to vote and the names of the persons in that precinct who are registered to vote but who did not present themselves to vote,’ and that if the Board of Registrars ‘retained such information, it could determine those elections in which a voter did or did not vote.’ (Emphasis added [in Advertiser Co.].) (Brief for appellants, pp. 4-5).
“The plain meaning of § 17-7-17 can be gleaned from its words; therefore, the statute should be construed in accordance with that meaning. Howard v. Burton, 470 So.2d 1176 (Ala.1985); Mobile County Republican Executive Committee v. Mandeville, 363 So.2d 754, 757 (Ala.1978). We hold that because the registration lists sought by appellants are lists of the persons voting, within the meaning of § 17-7-17, the appellants are not entitled to the relief sought.”
Advertiser Co. v. Hobbie, 474 So.2d 93 (Ala.1985). The majority does not “equate the procedure used in this case ... with the sort of duplication of the poll list prescribed by § 17-7-17.” I would point out that § 17-7-17 specifically prohibits “[a]ny election officer” from making duplications and prohibits the creation of a duplicate of the poll list or “memoranda therefrom.” While the color coding plan does not literally encompass the copying of the poll list, it has the same effect and amounts to the making of a memorandum of the poll list. I believe that § 17-7-17 clearly prohibits the implementation of the plan and therefore that it is “beyond the control of the judicial power” to authorize implementation of the plan notwithstanding the appealing argument that the plan would help in the enforcement of the election laws.