No. 72–1025. B. P. O. E. Lodge 2043 of Brunswick et al. v. Ingraham et al. Appeal from Sup. Jud. Ct. Me. dismissed for want of substantial federal question.

Mr. Justice Douglas, with whom Mr. Justice Stewart and Mr. Justice Blackmun concur, dissenting.

Appellants, 15 Maine lodges of the Benevolent and Protective Order of Elks, brought suit against the State Liquor Commission of Maine to enjoin it from denying them liquor licenses under § 1301–A of Tit. 17 of the Maine Rev. Stat. Ann.,[1] which reads:

"No person, firm or corporation holding a license under the State of Maine or any of its subdivisions for the dispensing of food, liquor or for any service or being a State of Maine corporation or a corporation authorized to do business in the State shall withhold membership, its facilities or services to any person on account of race, religion or national origin, except such organizations which are oriented to a particular religion or which are ethnic in character."

The Elks require a person to be a "white citizen" to be a member.[2] The Commission denied licenses to the 15 subordinate lodges pursuant to § 55 (8) of Tit. 28

---

[1] Section 1301–A was added to Tit. 17 in 1969. C. 371, Me. Laws 1969.

[2] Section 144 of the Elks Stat. Ann. (1972) provides:

"No person shall be accepted as a member of this Order unless he be a white citizen of the United States of America, of sound mind and body, of good character, not under the age of Twenty-one years,. and a believer in God. No person shall be accepted as a member of this Order who is directly or indirectly a member of or in any way connected or affiliated with the Communist Party, or who believes [in] or advocates the overthrow of our Government by force."

The bylaws of the National Order apparently are incorporated in the bylaws of each subordinate lodge.

of the Maine Rev. Stat. Ann., which provides that the Commission, in issuing or renewing licenses, "shall give consideration to the character of any applicant, the location of the place of business and the manner in which it has been operated." The Commission stated that the "whites only" limitation of the Elks Constitution established "bad moral character" of the subordinate lodges. The Supreme Judicial Court, reversing a decision of the superior court which had granted appellants a permanent injunction, upheld the Commission's action. The court stated:

> "We find it unnecessary to predicate our decision on the specific basis assigned by the Commission to support its actions—i. e., that [appellants] had 'bad moral character.' We conclude, rather, that the Commission's ultimate denial of license renewals was justified under the avowed public policy of the State of Maine, as delineated in the provisions of 17 M. R. S. A. § 1301–A, and the authority afforded the Commission under that statute conjoined with the provisions of 28 M. R. S. A. § 55 (8) allowing the Commission to take into account the 'character' of the plaintiffs (*independently of 'morality' considerations*) and the 'manner' by which they have 'operated.'" 297 A. 2d 607, 610. (Emphasis added.)

In concluding that the Commission was justified in denying the licenses because the lodges had violated the State's public policy embodied in § 1301–A, the court rejected appellants' contention, *inter alia,* that the statute violates the Equal Protection Clause of the Fourteenth Amendment.

Appellants sought a stay pending appeal to this Court, and the state court denied it. A similar application to this Court, eventually referred to the Conference, was

granted, 410 U. S. 903. The Court now dismisses the appeal for want of a substantial federal question. I cannot agree with this disposition.

The Maine court specifically considered appellants' claim that the exception for "organizations which are oriented to a particular religion or which are ethnic in character" violates the Equal Protection Clause because it permits some associations to have liquor licenses notwithstanding their discriminatory membership policies. The court said:

> "The fallacy of the argument is that it fails to recognize the differences between: (1) restrictive membership discriminations which are arbitrary, because without rational relationship to the fostering of the legitimate purposes for which the association has come into being, and (2) those which rationally promote such lawfully cognizable objectives. . . .
>
> ". . . Since such organizations are formed to promote lawful objectives which their members share as common interests by virtue of their religious or ethnic identities, their confining of membership to persons who bear the same religious or ethnic identity is a rational classification. It thus lacks the arbitrariness by which discrimination becomes invidious and which is outlawed by the 'equal protection of the laws' clause of the Fourteenth Amendment of the Constitution of the United States when it is the result of State action.
>
> "The exception as here recognized by the State of Maine is, therefore, consistent with the federal Fourteenth Amendment." 297 A. 2d, at 616–617.

Webster's New International Dictionary (2d ed.) tells us that "ethnic" means: "Relating to community of physical and mental traits in races, or designating groups of races of mankind discriminated on the basis of common

customs and characters." The "ethnic" exception in the Act therefore would seem to allow Chinese, Japanese, Malaysian, or African groups to practice discrimination in their lodges and still get liquor licenses but not to allow "whites" the same privilege. As stated long ago in *Strauder* v. *West Virginia,* 100 U. S. 303, 308:

> "If in those States where the colored people constitute a majority of the entire population a law should be enacted excluding all white men from jury service, thus denying to them the privilege of participating equally with the blacks in the administration of justice, we apprehend no one would be heard to claim that it would not be a denial to white men of the equal protection of the laws. Nor if a law should be passed excluding all naturalized Celtic Irishmen, would there be any doubt of its inconsistency with the spirit of the amendment. The very fact that colored people are singled out and expressly denied by a statute all right to participate in the administration of the law, as jurors, because of their color, though they are citizens, and may be in other respects fully qualified, is practically a brand upon them, affixed by the law, an assertion of their inferiority, and a stimulant to that race prejudice which is an impediment to securing to individuals of the race that equal justice which the law aims to secure to all others."

We repeated the same thought in *Hernandez* v. *Texas,* 347 U. S. 475, 478, in speaking of discrimination against persons of Mexican descent:

> "Throughout our history differences in race and color have defined easily identifiable groups which have at times required the aid of the courts in securing equal treatment under the laws. But community prejudices are not static, and from time to time

other differences from the community norm may define other groups which need the same protection. Whether such a group exists within a community is a question of fact. When the existence of a distinct class is demonstrated, and it is further shown that the laws, as written or as applied, single out that class for different treatment not based on some reasonable classification, the guarantees of the Constitution have been violated. The Fourteenth Amendment is not directed solely against discrimination due to a 'two-class theory'—that is, based upon differences between 'white' and 'Negro.''

That classifications based upon race [3] or nationality [4] are "suspect" and therefore demand close scrutiny is well established. See *San Antonio Ind. School Dist.* v. *Rodriguez, ante,* p. 1, at 104–105. (MARSHALL, J., dissenting). I do not question the State's beneficent motives in attempting to eliminate the scourge of discrimination by whites against nonwhites solely on the basis of color, but I cannot subscribe to the view that the State may legislate against this form of invidious discrimination and, at the same time, sanction and insulate another, albeit less invidious, in the State's eyes. Since the Maine statute and its application by the Supreme Judicial Court raise, in my mind, a substantial question under the Equal Protection Clause, I would note probable jurisdiction.

---

[3] See, *e. g., McLaughlin* v. *Florida,* 379 U. S. 184, 191–192; *Loving* v. *Virginia,* 388 U. S. 1, 9.

[4] See *Oyama* v. *California,* 332 U. S. 633, 644–646; *Korematsu* v. *United States,* 323 U. S. 214, 216.