First Federal Savings and Loan Association of Maywood *et al.*, Plaintiffs-Appellants, *v.* Edgar M. Elbert, Defendant-Appellee.

(No. 60816;

First District (1st Division)—October 20, 1975.

*Rehearing denied November 20, 1975.*

David A. Bridewell, of Russell, Bridewell, and Lapperre, and James J. Doheny, both of Chicago, for appellants.

Anna R. Lavin and Edward J. Calihan, Jr., both of Chicago, for appellee.

Mr. JUSTICE EGAN delivered the opinion of the court:

The plaintiffs, First Federal Savings and Loan Association of Maywood and Martin W. Sheade, M.D., trustee of the association's retirement plan and trust, brought this action for declaratory judgment seeking a determination of the defendant Edgar M. Elbert's claims for salary against the association and for retirement benefits against the trustee.

Indictments had been brought against Elbert in the United States District Court on February 28, 1969, charging that he had made false statements in connection with payouts by the association with respect to collection loan proceeds in violation of 18 U.S.C. § 1014 (1964). On March 3, 1969, the supervisory agent of the Federal Home Loan Bank Board ("Board") wrote the association requesting that Elbert be granted a leave of absence from his duties as director, president and managing officer of the association, pending final determination of the charges in the indictment. The letter further requested that during this period Elbert perform no duties nor act in any capacity in behalf of the association and that the association not expend its funds to defray any of Elbert's expenses in defending the charge.

Also on March 3, Elbert advised a special meeting of the association's directors of the indictment and requested a leave of absence pending the final determination of the charges. Unanimous resolutions were adopted granting the leave of absence and further providing that Elbert perform no duties nor act in any capacity in behalf of the association and that the association not extend any of its funds to defray his expenses. It was resolved that Irving Braun be designated vice chairman of the board, executive vice president and managing officer of the association.

On March 11 the Board advised the association that it would be improper for Elbert to be paid any compensation during his leave of absence. In compliance with this letter, the board of directors of the association adopted a resolution to that effect.

On March 12 Elbert was indicted for a second time in the United States District Court on charges of receiving approximately $4600, a Chris-Craft motorboat and accessories of a value of approximately $4000 in return for causing the association to make at least 23 construction loans.

On May 29 the Board, pursuant to the Home Owners' Loan Act and the Rules and Regulations for the Federal Savings & Loan System, entered an order suspending Elbert from further service as a director, chairman of the board, president and managing officer of the association until disposition of the indictments.

On October 15, at a regular monthly meeting of the board of directors, Irving Braun was elected chairman of the board, president and manag-

ing officer of the association. At the annual meeting of the board of directors on January 28, 1970, Braun was again elected chairman, president and managing officer.

On November 9, 1970, the first of the indictments was dismissed; and the second was dismissed on March 29, 1971. Both were dismissed on motion of the United States' Attorney.

Elbert then made a demand for salary from March 1, 1969, the date he requested the leave of absence, until April 30, 1972, the day he would normally have gone on retirement; he also demanded retirement benefits beginning May 1, 1972. The plaintiffs refused and filed this law suit. After a hearing, the court entered judgment that Elbert was due salaries from the date of the leave of absence, March 3, 1969, to January 28, 1970, the expiration date of his term of office; and that he was entitled to retirement benefits from May 1, 1972, which the court found to be Elbert's "early retirement date." The court also found that while Elbert might have been removed from office as president on January 28, 1970, the association had no right to terminate his employment in any other capacity and thus deprive him of retirement benefits since this absolute termination was contrary to the order of suspension "pending the outcome of the charges."

We first consider the ruling granting the defendant retirement benefits. The defendant was a co-founder of the institution and had been its president and board chairman for 12 years before his suspension. Under the terms of the pension plan, his normal retirement date would have been May 1, 1972, the first day of the month following his 70th birthday. The plan also provided for an early retirement date which required at least 180 calendar months' service. The defendant's employment began in February, 1957. Thus, his early retirement date would have been March 1, 1972. It is the defendant's position that he remained president and managing officer beyond March 1 or May 1 of 1972. In effect, he contends that the alleged removal by the association on October, 15, 1969, and the election of Braun as president at the annual meeting on January 28, 1970, were nullities.

The Home Owners' Loan Act provides, in part, as follows (12 U.S.C. § 1464(5) (A) (1964)):

"Whenever any director or officer of an association,   *   *   * is charged in any   *   *   * indictment   *   *   * authorized by a United States Attorney, with the commission of or participation in a felony involving dishonesty or breach of trust, the Board may by written notice served upon such director   *   *   * suspend him from office and/or prohibit him from further participation in any manner in the conduct of the affairs of the association. A

copy of such notice shall also be served upon the association. Such suspension and/or prohibition shall remain in effect until such * * * indictment, * * * is finally disposed of or until terminated by the Board. In the event that a judgment of conviction with respect to such offense is entered against such director, officer, or other person, and at such time as such judgment is not subject to further appellate review, the Board may issue and serve upon such director, officer, or other person an order removing him from office and/or prohibiting him from further participation in any manner in the conduct of the affairs of the association except with the consent of the Board. A copy of such order shall be served upon such association, whereupon such director or officer shall cease to be a director or officer of such association. * * *"

In construing the statute, the heart of the defendant's argument is set out as follows:

"Thus it is clear under law that a suspended officer or director retains his position until conviction and the issuance of the order removing him from office or prohibiting him from further participation. By necessary implication an officer or director who is not convicted retains his position as officer or director after the lifting of the prohibition or suspension, which would necessarily result from an acquittal, or, in this case, a voluntary dismissal of the indictments by the United States Attorney. In other words, continuity of employment—though suspended—is contemplated."

We believe the defendant has misinterpreted the purpose and effect of the statute. A study of the legislative history of the Act discloses that Congress was dissatisfied with the previously existing remedies available to the government in supervising private lending institutions which engaged in unsound or unlawful practices. It was noted that, for example, taking custody of an institution or terminating its insured status could be too severe in some situations, and in others the remedies were so time-consuming that substantial injury occurred before remedial action was effected; also, that this statute, as then proposed, would grant the Federal supervisory agency authority "to issue cease-and-desist orders or suspension or removal orders subject to standards and procedures designed to protect both the institutions involved, and their officials and the depositors, savers and others interested in a sound and effective operation of the financial institutions." The primary purpose of the Act was to prevent violations of law and unsound practices which "might adversely affect the Nation's financial institutions, with resulting harmful consequences to the growth and development of the Nation's economy." (See 1966 U.S. Code Cong. and Admin. News 3532 *et seq.*) The

Act, it is apparent from the legislative history, was designed to grant the Board summary authority to remove an officer whose retention would jeopardize the stability of the lending institution. The Act was not designed to, and did not, suspend all other lawful powers of the lending institutions.

Section 544.5 of the Rules and Regulations of the Federal Savings & Loan System (12 C.F.R. § 544.5 (1975)) prescribes a uniform set of bylaws for the operation of a Federal savings and loan association. Those bylaws provide, in part, that the term of an officer shall be one year and that any officer may be removed at any time by the board of directors. Thus, in the absence of any statute or suspension order, Elbert's term would have terminated by operation of law on January 28, 1970.

If the defendant's interpretation of the effect of a statutory suspension is correct, a suspended officer would be "locked in" a position for an indefinite period. In effect, with respect to tenure at least, he would be in a better position than an unsuspended officer. We cannot accept the defendant's interpretation.

■■ The proceedings of January 28, 1970, insofar as the record reflects, were in conformance with the bylaws. The evidence established that those participating would not have elected the defendant a director nor an officer. We judge, therefore, that Elbert's employment ended on January 28, 1970, and that he is not entitled to any retirement benefits.

The plaintiff next argues that the defendant was not entitled to any compensation during the period of his leave of absence and suspension. The initial notice from the Board on March 3 "requested" that the defendant be granted a leave of absence and that the association refrain from using any of its funds to defray the defendant's expenses in defending the charges. On March 11, the Board again wrote to the association that it would be improper to pay the defendant any compensation and, again, "requested" the association to adopt such a resolution. On March 12, the association passed a resolution which said that "in order to comply with the directive of the Board" no compensation would be paid to Elbert, who, since he had already been suspended, was not present and was unable to present his views.

The question arises whether the association was required to acquiesce in any of the "requests" of the Board. It is apparent that the leave of absence was justified in the face of a certain suspension by the Board if the association did not comply with the Board's "request." The payment of legal expenses could well be considered as an *ultra vires* act, and the association was justified in acceding to that "request." But there is nothing in the statute that authorized the Board to order a suspension without compensation. The principal purpose of the Act is to remove

any person facing prosecution whose participation in active management would weaken the confidence of investors and savers in the association with an attendant adverse effect on the financial stability of the institution. The Act, at the same time, was intended to insure that officials of lending institutions would receive "fair treatment from the Government," and "a reasonable degree of protection from Government actions which might at times, for one reason or another, generate [sic] into arbitrary, capricious, and overbearing tactics." 1966 U.S. Code Cong. and Admin. News 3535.

What then is the "fair treatment from the Government" and the "reasonable degree of protection" to be afforded an official of a lending institution who has been unjustly suspended? We note that under section 4 of the Act, the Board is empowered to remove officers who have shown "personal dishonesty or unfitness"; but Section 4 further provides that such officers may seek a judicial stay of the removal order. But no such right of judicial review is granted to an officer removed or suspended because of the pendency of a criminal charge, a contrary suggestion by the plaintiff notwithstanding. An action for money damages may not be maintained against the Board. (*Central Savings & Loan Association v. Federal Home Loan Bank Board* (S.D. Iowa 1968), 293 F.Supp. 617, *aff'd* (8th Cir. 1970), 422 F.2d 504.) If the argument of the plaintiff is correct, then an innocent officer may be suspended with no right of review, no redress for damages and, in addition, no compensation on the order of the Board. If this be so, the language of the Chairman of the House Committee on Banking and Currency that the bill was designed to afford "fair treatment" and a "reasonable degree of protection" is mere lip service.

■■ The Board did not take the position that the plaintiff does here. After the indictments had been dismissed, the Board's General Counsel wrote letters to the defendant terminating his suspension; and informing him that the Board would not direct or request the association to elect him a director or to appoint him an officer on the ground that such a matter was outside the Board's authority. At the same time the General Counsel informed the defendant that his discussion with the association "could include the issue of a deferred compensation plan for Edgar Elbert." A subsequent letter from the Associate General Counsel informed the association: "[A] Federal association has no obligation to compensate that officer for any period *after he has resigned or has been replaced as an officer.* However, we are advised that there would be no supervisory objection to *the payment of reasonable compensation to Mr. Elbert for the period of his suspension up to the date he was replaced,* but would naturally expect the association to consider any action it

might take in light of its financial condition and its responsibilities to its members." (Emphasis added.) From this language we conclude that the Board took the position that it had no authority to enter a suspension order, the terms of which would irrevocably bar a reinstated officer from compensation. Although construction of statutes by administrative agencies charged with the enforcement of the statute is not binding, such construction should be and is persuasive. (*Hardway v. Board of Education,* 1 Ill.App.3d 298, 301, 274 N.E.2d 213.) While no case precisely in point has been cited to us, analogous authority exists in those civil service cases which have held an employee wrongfully discharged or suspended to be entitled to back pay, even though the statute does not so provide. *People ex rel. Maxwell v. Conlisk,* 60 Ill.2d 243, 326 N.E.2d 377; *City of Chicago v. Luthardt,* 191 Ill. 516, 61 N.E. 410.

■■ For these reasons we judge that the statute does not empower the Board to suspend an officer without compensation and that, therefore, the association was not obliged to honor the "request" by the Board that the defendant not be compensated. Judging from the correspondence in evidence and the arguments of the plaintiff, no financial problem will be created by payment of compensation. The resolution that the defendant not be paid recited that it was done "in order to comply with the *directive*" of the Board. (Emphasis added.) The trial court apparently concluded that the resolution would not have been passed but for the action of the Board. We judge that that conclusion is not against the manifest weight of the evidence and that, therefore, the trial court was correct in concluding that the defendant was entitled to compensation during the period of suspension.

That being so, the next question to be determined is the period of time for which the defendant is to be compensated. On October 15, 1969, a meeting was held at which two persons were elected as directors. The minutes of the meeting recited that the election was held in order to fill two "vacancies" under the requirements of section 555.1(b) of the Rules and Regulations for the Federal Savings & Loan Systems (12 C.F.R. § 555.1(b) (1975)). It should be noted that the two "vacancies" referred to the suspension of the defendant and his son, Philip M. Elbert, who was a director and vice president and who was indicted and suspended with the defendant. Immediately after the election of the two directors, who were to serve until the annual meeting of members, Irving M. Braun was elected the president and managing officer and chairman of the board.

We believe that the directors were improperly elected. Section 555.1, upon which the election was based, recites, in part, as follows:

"(a) *Quorum of; number necessary for.* Where the number of

directors provided for in the bylaws or as fixed thereunder by resolution of the members have been elected, it is necessary to have a majority of the authorized number in order to constitute a quorum. * * *.

(b) *Vacancies, power of directors to fill.* The board of directors of a Federal association * * *, without calling a special meeting of the members for the purpose of electing directors to fill vacancies, may validly elect directors to fill vacancies, including vacancies created by (1) resignation, (2) increase in the number of the directors by the board of directors as provided by the bylaws, and (3) increase in the number of directors voted by the members, as provided by the bylaws, if the members failed to elect directors to the new positions created by them. * * *."

Section 550.6 of the Rules and Regulations (12 C.F.R. § 550.6 (1975)) provides as follows:

"If at any time, because of the suspension of one or more directors pursuant to the provisions of this part, there shall be on the board of directors of an association less than a quorum of directors not so suspended, all powers and functions vested in or exercisable by such board shall vest in and be exercisable by the director or directors on the board and not so suspended, until such time as there shall be a quorum of the board of directors. In the event all of the directors of an association are so suspended, the Board shall appoint persons to serve temporarily as directors in their place and stead pending the termination of such suspensions, or until such time as those who have been suspended cease to be directors of the association and their respective successors take office."

It is clear to us that any problems of corporate management created by a suspension of a director come within the ambit of section 550.6 and not section 555.1; that a suspension does not constitute a "vacancy"; and that there were no "vacancies" on the associations board on October 15. In addition, section 550.6 provides no authority for the plaintiff's action on October 15, since section 550.6 deals only with suspensions which leave a board of directors without a quorum. The board of directors still had a quorum after the suspension of the Elberts.

The plaintiff points to the bylaws in support of the actions taken on October 15. Those bylaws provide that an officer may be removed at any time by the board of directors. But the proceedings of October 15 in no way purport to constitute a removal. After the two directors were elected, the minutes reflect the following:

"Number 4. *Election of Officers*: The next item to be presented to the board was the *necessity* for the election of new officers in

order to provide for various details required." (Emphasis added.) The defendant is not even mentioned in the minutes of the meeting of October 15. It is apparent that the directors were operating under the assumption that the office of president was already "vacant"; but it was not; and we conclude there was no "removal" of the defendant as an officer. For these reasons we judge that the trial court correctly ruled that the defendant was entitled to compensation until January 28, 1970, at which time his term of office expired.

That part of the judgment granting retirement benefits to the defendant is reversed and that part of the judgment granting compensation to January 28, 1970, is affirmed.

Judgment affirmed in part and reversed in part.

BURKE, P. J., and SIMON, J., concur.