CHARLES W. DAVIS *et al.*, Plaintiffs-Appellants, *v.* THE ATTIC CLUB *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 62654

Opinion filed December 21, 1977.

SIMON, P. J., dissenting.

Sheribel F. Rothenberg, of Chicago, for appellants.

Kirkland & Ellis, Mayer, Brown & Platt, Peterson, Ross, Rall, Barber & Seidel, Keck, Cushman, Mahin & Cate, Winston & Strawn, and Carole K. Bellows, all of Chicago (Don H. Reuben, John E. Angle, and Sydney B. McDole, of counsel), for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

This is an action for declaratory and injunctive relief (Ill. Rev. Stat. 1973, ch. 110, par. 57.1) commenced in the Circuit Court of Cook County against the Illinois Liquor Control Commission and several clubs holding

liquor licenses, alleging that the defendant clubs discriminate on the basis of sex in contravention of the Illinois Liquor Control Act and the Illinois Constitution of 1970. The plaintiffs ask the court to declare that section 12b of the Illinois Liquor Control Act (Ill. Rev. Stat. 1973, ch. 43, par. 133) prohibits denial to any person the full and equal enjoyment of the accommodations, facilities and privileges of any licensee's premises on the basis of sex, and that article I, section 17 of the 1970 Illinois Constitution prohibits discrimination on the basis of sex in the sale or rental of property including sale of liquor by clubs and organizations. The defendant clubs and the Illinois Liquor Control Commission presented motions to dismiss which were granted. This appeal follows.

The plaintiffs each claim injury as a result of discrimination. Charles W. Davis, a Chicago attorney, alleges that as a member of the Mid-Day Club he cannot bring female colleagues or clients to lunch there on the same basis as men because of the club rule that women may be served alcoholic beverages and luncheon only in private dining rooms and that arrangements for such rooms must usually be made well in advance of the date. Women are barred from the main dining room, reception area and cocktail lounge at luncheon. Davis claims that this policy has imposed an unwarranted social and economic burden on him and that it has impaired the business and professional expectations of himself and of female colleagues with whom he might otherwise deal and of clients from whom he otherwise might obtain business.

Nikki Rutenberg, the owner of a Chicago public relations and consulting firm and a partner in a radio and television production firm, alleges that although her firm is a member of a defendant club and pays the same annual membership fee as male members, she cannot use any of the facilities at lunchtime. On one specific occasion she was barred from that club at lunchtime even though she showed the manager her membership card. Because she is engaged in public relations she must have a comfortable and prestigious place to take clients and her exclusion from the defendant clubs solely on the basis of sex has caused severe economic damage to her career and reputation and unnecessary embarrassment to her clients.

Helen Hart Jones, a partner in a Chicago law firm, alleges that she is not a member of any defendant club and has never applied for membership because of their well-known exclusionary policies. Solely because of her sex she is denied full and equal enjoyment of the advantages and facilities of the clubs, cannot bring clients to these clubs, or attend business meetings with her male colleagues at some of the defendant clubs. She alleges that this is a serious restriction on her professional career in that it impedes her ability to obtain clients and excludes her from the site of informal handling of business transactions.

Professional Organization of Women for Equal Rights (P.O.W.E.R.), an association of over 75 professional women in the Chicago area, through its president Stephanie Kanwit, on behalf of its members, alleges it is harmed both economically and professionally by the existence of defendant clubs' illegal policies. As a result of their being excluded from using the facilities of these clubs or their being severely restricted in the use of such facilities solely because of their sex, P.O.W.E.R. asserts women are barred from the economic and political life of a sector of the business community.

The defendant Illinois Liquor Control Commission was joined for the purpose of securing appropriate relief against defendant liquor licensees.

The plaintiffs conclude that the defendant clubs are currently acting in contravention of the provisions of the Illinois Liquor Control Act (Ill. Rev. Stat. 1973, ch. 43, par. 94 *et seq.*) and article I, section 17 of the Illinois Constitution (Ill. Const. 1970, art. I, §17). The plaintiffs present no claim that the issuance of a liquor license comprises state action in violation of the due process clause of the Fourteenth Amendment of the United States Constitution. See *Moose Lodge No. 107 v. Irvis* (1972), 407 U.S. 163, 32 L. Ed. 2d 627, 92 S. Ct. 1965.

The first issue raised on appeal is whether the provisions of the Illinois Liquor Control Act which pertain to the licensing of clubs create an exception to the Act's Civil Rights provision which forbids licensees to discriminate against "any person." Three sections of the Act are involved: article VI, section 21 (Ill. Rev. Stat. 1973, ch. 43, par. 142):

> "No person shall receive a local license to sell alcoholic liquor upon any premises * * * as a club unless it has the qualifications * * * described in * * * [article I, section 2.24] * * *";

article I, section 2.24 (Ill. Rev. Stat. 1973, ch. 43, par. 95.24):

> " 'Club' means a corporation organized under the laws of this State, not for pecuniary profit, solely for the promotion of some common object other than the sale or consumption of alcoholic liquors, kept, used and maintained by its members through the payment of annual dues, * * *";

and article VI, section 12b, the civil rights provision (Ill. Rev. Stat. 1973, ch. 43, par. 133):

> "No licensee licensed under the provisions of this Act shall deny or permit his agents and employees to deny *any person the full and equal enjoyment* of the accommodations, advantages, facilities and privileges of any premises in which alcoholic liquors are authorized to be sold subject *only to the conditions and limitations established by law and applicable alike to all citizens.*" (Emphasis added.)

The plaintiffs reason that these sections must be read in context with article II, section 1 (Ill. Rev. Stat. 1973, ch. 43, par. 96):

"No person shall * * * sell * * * any alcoholic liquor * * *, except as specifically provided in this Act * * *."

One of the specific provisions governing the sale of liquor is the civil rights section of the Act, which, by its terms, applies to every sale on authorized premises, except for certain "conditions and limitations established by law." Absent an exception, a licensee cannot discriminate against women in the sale of liquor.

The plaintiffs contend the trial court erred in construing the sections of the Act permitting the licensing of clubs (article VI, section 21 and article I, section 2.24) as an exception to the civil rights provision. The civil rights provision, they note, must be interpreted through article I, section 1 (Ill. Rev. Stat. 1973, ch. 43, par. 94) which requires a liberal construction of the Act to promote a purpose of temperance by the sound and careful control of the sale of alcoholic beverages. Article II, section 1, stipulating that liquor shall not be sold except as specifically provided in the Act, complements the purpose of careful control by rigidly restricting sales transactions to the explicit dictates of the Act. The only exceptions specifically provided to the civil rights portion of the Act, the plaintiffs argue, are comprehended in article VI, section 12 (Ill. Rev. Stat. 1973, ch. 43, par. 131): no licensee shall sell alcoholic beverages to "any person" who is a minor, an intoxicated person, a habitual drunkard, a spendthrift, insane, mentally ill or mentally deficient. The exception claimed by the clubs and found by the trial court to article VI, section 12b is not a specific exemption and, consequently, not available to the defendants.

We cannot agree with such a reading. To accept plaintiffs' argument would transpose the word "specifically" from one part of the law to another. "Specifically," contained in article II, section 1 of the Act, qualifies the general prohibition against selling liquor by characterizing those persons who are able to sell liquor as "specifically" provided. The civil rights provision does not use the word "specifically" to define its scope. Its rule, that "any person" shall have equal enjoyment of facilities, is followed by an exception: "subject to the conditions and limitations established by law." Exceptions to the civil rights provision need not be specifically provided for in the Act. What must be specific is a license to sell alcoholic beverages. Article VI, section 21 specifically provides that a club may receive a liquor license.

Nor do we believe that a plain reading of article VI, section 12b comports with the interpretation that article VI, section 12 is the only exception to the Act's equality mandate. The civil rights section states that licensees must provide full and equal enjoyment of facilities to "any

person." Article VI, section 21 provides that liquor licenses shall be issued to clubs. Clubs, defined in article I, section 2.24, must be not for profit corporations organized wholly for the promotion of some common object other than the sale of liquor with facilities kept, used and maintained by members. This statutorily distinguishes clubs from other licensed establishments. For example, restaurants and hotels, defined in article I, sections 2.23 and 2.25 (Ill. Rev. Stat. 1973, ch. 43, pars. 95.23 and 95.25) are recognized as premises held out to the "public." Explicit in the authorization of a license to a club is the fact that club members, not the public, will be served through it.

While the Act, in the civil rights provision, manifests a clear concern for the access of any person to facilities, accommodations, advantages and privileges of a licensee, there is no express attempt, in the civil rights provision or elsewhere in the Act, to regulate who may constitute the category of member (or member's guest) of a licensee. Rather, the language of the licensing provisions for clubs limits their patronage, thus acknowledging their selective membership policies.

■■ When faced with a question of statutory interpretation we are not free to disregard one part of a statute in favor of another. To interpret the civil rights provision to require all premises authorized to sell liquor, including clubs, to grant to all persons the "full and equal enjoyment" of facilities fabricates an inconsistency within the Act between that provision and the Act's definition of licensees licensed as clubs. We must read the Act as a whole, according significance and effect, if possible, to every sentence, phrase and word, without destroying the sense and effect of the law, so that no word, clause or sentence is rendered meaningless or superfluous. (*People ex rel. Barrett v. Barrett* (1964), 31 Ill. 2d 360, 201 N.E.2d 849.) We find that the statutory scheme contemplates that those sections of the Act which provide for the licensing of clubs are conditions or limitations excepting such premises from the dictates of the civil rights provision.

But it is not sufficient to state that such conditions, when established by law, except clubs from the effect of article 12b. The civil rights provision, as the plaintiffs point out, sets up a second qualification which an exception must satisfy. The condition or limitation creating an obstacle to access must also be "applicable alike to all citizens." The plaintiffs argue that this bars conditions of access which some citizens cannot meet because of immutable characteristics, such as sex. However, to read this phrase to denote only immutable characteristics would apparently condone discrimination on the basis of those characteristics which are not immutable, such as religion or creed, because they are not applicable alike to all citizens. This position is contrary to the accepted conception of

civil rights and, predicated on the slim phrasing of this statute, is not tenable.

Further, such an interpretation is antithetical to the reading of the phrase by the court in *Walton Playboy Clubs, Inc. v. City of Chicago* (1962), 37 Ill. App. 2d 425, 185 N.E.2d 719. That case, dealing with the civil rights section of the Act as it applies to a profit-making licensee of public accommodation, holds that the provision prohibits discrimination by such licensee on the basis of color, creed and race. The *Walton* court, far from constricting exceptions to the civil rights provision to the list of spendthrifts, drunks, minors and incompetents found in article VI, section 12, determined that not all discrimination, even if performed in licensed premises open to the public, is forbidden. Discriminatory practices by a licensee, such as the economic exaction of a fee prior to the entry, are permitted, though not specifically provided for in the Act, so long as the limitation practiced relates to all persons equally, and hence is "applicable alike to all citizens." In the present instance, the conditions providing for the licensing of clubs, like the economic exaction, do not circumscribe the composition of the organization able to obtain a license by criteria which would unfairly distinguish between citizens. Any citizens, unlimited by color, creed, race or gender, organized in a manner meeting the definition of a club, are eligible to be licensed as a club.

Finally, the plaintiffs advocate adoption by this court of the decision of the Liquor Control Commission, In re Chicago Club v. ILC, 73-74, CIT No. 116. It specifically holds that the denial of admission and service, by a licensed club, to a woman reporter who was invited to the club by a member for a press conference, is a violation of article VI, section 12b. The Commission ordered the license of the club suspended for four days. The plaintiff underscores that portion of the Commission's memorandum supporting its order which states that the exclusion of women from the full and equal enjoyment of the accommodations is a limitation applicable only to a part of the citizenry and not "applicable alike to all citizens."

It is difficult to determine the exact rationale of the Commission's decision. At one point, in its memorandum, the Commission declares it "* * * does not take the position that sex discrimination by the club and the mere issuance of a liquor license to the club by the Commission is violative of equal protection either under the State Constitution or the Fourteenth Amendment to the U.S. Constitution. There is no encouragement or participation, i.e. 'State Action', in the discriminatory practices of the club by the Commission as was found in *Moose Lodge No. 107 v. LeRoy Irvis*, [citation], where the Pennsylvania Liquor law required the private

club liquor licensees to abide by their constitutions even if they provided for discrimination."

The Commission further states,

"We are not contending that discrimination is illegal, nor that private clubs are not allowed to discriminate."

Rather, the Commission finds, the State of Illinois, having the power to impose stringent regulations on any liquor licensee, intended the ambit of the Civil Rights section to include licensed clubs.

The Liquor Control Commission's analysis of the public policy reflected in article VI, section 12b is predicated on the reasoning in *B.P.O.E. Lodge No. 2043 v. Ingraham*, 297 A.2d 607 (Me. 1972), where the Supreme Court of Maine interpreted an antidiscrimination provision of that State's criminal laws (Me. Rev. Stat. Ann. tit. 17, §1301—A (Supp. 1971)) to apply to a liquor licensee. The court held that the Maine Liquor Commission had the authority to combine that statute with the Commission's specific powers under the State's liquor laws to deny a license to a club which refused membership and service to persons because of race. Citing the language of the Maine criminal law as corresponding to the wording of article VI, section 12b of the Illinois Act, the Illinois Liquor Control Commission found an identical intent by this State to condition the issuance of a liquor license to clubs on the absence of any discrimination on their premises. The Illinois Liquor Control Commission, however, in its supporting memorandum, misquotes, and therefore, misreads the Maine antidiscrimination law, omitting from it pertinent language which unquestionably distinguishes it from the Illinois Act. Completely quoted, the Maine law includes, within the lists of benefits dispensed by a licensee, not only a prohibition against discrimination relating to facilities and services, but also an explicit interdiction against discrimination in "memberships," a resource only available from a club. The rendition of the Maine law cited by the Illinois Liquor Commission does not contain the word "membership"; neither does the Civil Rights provision of the Illinois Liquor Control Act. A State may be able to condition the privilege of a license on the lack of discrimination in membership by a licensee as Maine has done, but without designation of "membership" in the Illinois Act, the policy contemplated by the Illinois legislature in article VI, section 12b cannot be the same as the policy ratified in *Ingraham*. Reliance on that the decision by the Commission is unwarranted. Decisions of the Illinois Liquor Control Commission, although not binding on this court, should be accorded considerable weight. (*Strat-O-Seal Manufacturing Co. v. Scott* (1966), 72 Ill. App. 2d 480, 218 N.E.2d 227.) In light of the fact that the Commission does not contend that clubs cannot discriminate, and

considering the misplaced emphasis on *Ingraham* in the Commission's decision, however, we cannot extend the finding of the Illinois Liquor Control Commission in In re Chicago Club to the present situation.

In *Moose Lodge No. 107 v. Irvis*, (1972), 407 U.S. 163, 32 L. Ed. 2d 627, 92 S. Ct. 1965, the majority recognized that without special circumstances beyond licensing, private discrimination, however morally repugnant, may be practiced; in accordance with the majority on that point Mr. Justice Douglas, in his dissent, said:

> "My view of the First Amendment and the related guarantees of the Bill of Rights is that they create a zone of privacy which precludes government from interfering with private clubs or groups. The associational rights which our system honors permit all white, all black, all brown, and all yellow clubs to be formed. They also permit all Catholic, all Jewish, or all agnostic clubs to be established. Government may not tell a man or woman who his or her associates must be. The individual can be as selective as he desires. So the fact that the Moose Lodge allows only Caucasians to join or come as guests is constitutionally irrelevant, as is the decision of the Black Muslims to admit to their services only members of their race.

> The problem is different, however, where the public domain is concerned. I have indicated in *Garner v. Louisiana*, 368 U.S. 157, and *Lombard v. Louisiana*, 373 U.S. 267, that where restaurants or other facilities serving the public are concerned and licenses are obtained from the State for operating the business, the 'public' may not be defined by the proprietor to include only people of his choice; nor may a state or municipal service be granted only to some. *Evans v. Newton*, 382 U.S. 296, 298-99.

> Those cases are not precisely apposite, however, for a private club, by definition, is not in the public domain. And the fact that a private club gets some kind of permit from the State or municipality does not make it *ipso facto* a public enterprise or undertaking, any more than the grant to a householder of a permit to operate an incinerator puts the householder in the public domain."

407 U.S. 163, 179-180, 32 L. Ed. 2d 627, 641-42, 92 S. Ct. 1965, 1974.

The Illinois Liquor Control Act in article VI, section 12b establishes a policy of enforcement of equal rights in premises licensed to sell liquor. An examination of the explicit provisions of the Act shows that the policy is aimed at commercial licensees, those whose purpose is to sell liquor and food to the public. Organizations meeting the definition of clubs operate outside the commercial sphere, selling alcoholic beverages only incident to their associational objectives.

■■ It may be constitutionally permissible for the State to require the abrogation of those associational freedoms by granting a liquor license only to clubs which would exercise it without discrimination by sex. Our analysis indicates no such requirement in the present Act. We agree with the defendants and hold that clubs as defined in article II, section 2.24 are exempted from article VI, section 12b of the Illinois Liquor Control Act.

Plaintiffs next argue that the Bill of Rights article, article I, section 17, of the Illinois Constitution of 1970 bars clubs from discriminating in the sale of liquor on the basis of sex.

Article I, section 17, provides:

> "All persons shall have the right to be free from discrimination on the basis of race, color, creed, national ancestry and sex in the hiring and promotion practices of any employer or in the sale or rental of property.
>
> These rights are enforceable without action by the General Assembly, but the General Assembly by law may establish reasonable exemptions relating to these rights and provide additional remedies for their violation."

Interpretation of this section rests, in part, on the scope of the word "property." Plaintiffs contend that the term "property" refers to all property, both real and personal, necessarily comprehending alcoholic beverages; the defendants would limit the definition to real property alone.

In *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 281 N.E.2d 317, our supreme court stated at page 109:

> "Sound rules of construction require that in those instances in which this court, prior to the adoption of the constitution of 1970, has defined a term found therein, that it be given the same definition, unless it is clearly apparent that some other meaning was intended."

Before the adoption of the 1970 constitution, courts defined the word "property" to comprehend every interest one may have in any and everything which is the subject of ownership, together with the right to freely possess, enjoy and dispose of the thing, (*Vollmer v. McGowan* (1951), 409 Ill. 306, 315, 99 N.E.2d 337; *Metropolitan Trust Co. v. Jones* (1943), 384 Ill. 248, 251, 51 N.E.2d 256; *Wickizer v. Whitney* (1936), 364 Ill. 125, 4 N.E.2d 46.) In its broadest and most inclusive sense "property" subsumes all rights and interests in real and personal holdings, and also in easements, franchises, and incorporeal hereditaments. *Metropolitan City Ry. Co. v. Chicago West Division Ry. Co.* (1877), 87 Ill. 317, 324.

Article I, section 2 of the 1970 Illinois Constitution contains the same language as article 2, section 2, of the 1870 Illinois Constitution: "No person shall be deprived of life, liberty or property without due process

of law, * * *." "Property" in that clause was consistently interpreted to involve every interest anyone may have in any and everything that is the subject of ownership by man, together with the right to freely possess, use, enjoy or dispose of the same. (*Father Basil's Lodge, Inc. v. City of Chicago* (1946), 393 Ill. 246, 256, 65 N.E.2d 805.) Since the drafters of the 1970 constitution did not qualify section 17 by specifying "real property" or "personal property" it could be inferred that they intended the more inclusive term "property" as defined prior to the adoption of the 1970 constitution.

Defendants present an alternative means of construction, suggesting that the true inquiry in interpreting a constitutional provision is: "what was the understanding of the meaning of the words used by the voters who adopted it?" (*Wolfson v. Avery* (1955), 6 Ill. 2d 78, 88, 126 N.E.2d 701, 707; *Burke v. Snively* (1904), 208 Ill. 328, 344, 70 N.E. 327.) While we do not disagree with this approach, we note that the cases advise a somewhat larger realm of examination. *Wolfson* then goes on to say at page 88:

> "Still, the practice of consulting the debates of the members of the convention which framed the constitution, as aiding to a correct determination of the intent of the framers of the instrument, has long been indulged in by courts as aiding to a true understanding of the meaning of provisions that are thought to be doubtful."

The voters were provided an "Official Text With Explanation" of the proposed 1970 constitution, which read in part (7 Proceedings 2673):

> "The traditional Preamble is revised in order for it more fully to describe the aims of government in the State. Individual rights protected by the present Constitution are retained. There are additional new protections. *All persons are guaranteed freedom from discrimination in housing and employment on the basis of race, color, creed, national origin, sex, and mental or physical handicap. * * * Equal protection of the laws is not to be denied on account of sex or for other reason.*" (Emphasis added.)

Defendants contend that the voters read this explanation and believed that "property" meant residential property only. We find it difficult to presume that the voters, on the basis of that single paragraph, were informed of all the possible ramifications of the entire Preamble and Bill of Rights contained in the 1970 constitution. In addition, it is still the duty of the courts to construe the constitution so as to effectuate the intent of its drafters (*People v. Turner* (1964), 31 Ill. 2d 197, 201 N.E.2d 415) rather than to search for the common perceptions of its ratifiers.

In the Committee Proposals (6 Proceedings 70) the Committee on Bill of Rights states, " 'Property' means all property." In the verbatim

transcript (3 Proceedings 1598) the members of the committee were asked if "property" referred to personal property:

> "MR. JASKULA: Mr. Wilson, in your explanation and in the proposal you referred to property, namely, real property. Did you mean to include personal property, also?
>
> MR. WILSON: The word, Mr. Jaskula, is 'property,' and I assume that it would include personal property. However, I think the real rub comes in real estate which is not movable, of course. I—we didn't—I must say that I recall that we heard no testimony about discrimination in the sale of portable property—property that people can take and move around.
>
> MR. JASKULA: But you do intend to include the personal property, also. Is that correct?
>
> MR. WILSON: The term is broad enough to include personal property, yes, sir."

This is sufficient to indicate that the drafters intended the word "property" to include both real and personal property. We therefore, find that "property" as contained in article I in section 17 means both real and personal property.

Since article I, section 17 applies to the sale of personal property the question becomes whether a club or any other voluntary political, social, athletic, religious, educational or any other association which sells liquor or sandwiches or cigarettes or any personal property may do so to less than all persons when no allegation is made that state action is involved.

The Proceedings show that the drafters of the constitution did not include voluntary associations in their construction of section 17. The Committee Proposals state (6 Proceedings 67-68):

> "The Committee considered many different proposals for constitutional provisions to combat discrimination. Some were narrowly drawn to reach a single type of discrimination, such as discrimination against women in employment, and some were very broad and far-reaching, such as a proposal that would have even forbidden discrimination in voluntary associations. The Committee finally concluded that there should be a constitutional provision forbidding discrimination, and that the provision should be specifically directed at and limited to the important areas of employment and the sale or rental of property."

Footnoted are the various exemptions written into State and Federal legislation forbidding discrimination. (See, *e.g.*, Title VIII of the Civil Rights Act of 1968, (42 U.S.C. 3607), which provides an exemption for clubs in the sale, rental and financing of housing; Title II of the Civil Rights Act of 1964 (42 U.S.C. §2000a(e)), which exempts private clubs from the anti-discrimination provisions in places of public

accommodation, and Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e-2), and the Illinois Fair Employment Practices Act (Ill. Rev. Stat. 1969, ch. 48, par. 853), which provides for some exceptions to employment discrimination.) The Proceedings then cite other examples of permissible discrimination (6 Proceedings 68):

"[I]t is obviously proper for a congregation to utilize a religious test in employing a minister. Similarly, few would approve an anti-discrimination provision that absolutely prohibited the kind of indirect discrimination involved in providing housing exclusively to the aged members of certain religious or ethnic organizations, or women's groups."

Later they state (6 Proceedings 70):

"The Committee omitted any reference to discrimination in voluntary associations or in private education because it concluded that this subject was not proper for a constitutional provision."

Again in the debates (3 Proceedings 1592-93) Lewis Wilson, a committee member, declared:

"I might say, to start out with, that the committee considered any number of proposals. Many of them went much further than this. For instance, we had proposals that would have barred discrimination in such things as voluntary association—whatever that might mean—political participation, private education, inherent and inalienable rights, and a number of others. These are just examples of some. I would say that rather early in the game the committee—or at least the majority of the committee—decided upon two things: that it would not take a doctrinaire approach to the problem and that it would not take a shotgun approach. Rather, we decided upon a rifle-shot approach, and we looked for the areas in which discrimination—if it existed and when it existed—was more meaningful in the sense that it was more harmful. And while an argument might be made for some of these other areas, it was the decision of the committee to limit the areas to be covered by the provision to the areas of employment and the sale and rental of property.

\* \* \*

\* \* \* The job of a bill of rights always is a job of balancing and trying to evaluate competing interests. \* \* \* We felt that the legislature should be empowered to provide for reasonable exemptions here where the balancing would be the other way around \* \* \*.

Now, let me give you an idea of some of these possible exemptions which we feel are reasonable and which the legislature would be empowered to enact. \* \* \* For example, the right of

religious organizations to employ or provide housing for members of their own faith only. This could be such things as children's homes, old people's homes, and various things of that kind. The right of truly private clubs to provide housing for their own members only would be another example, in the committee's view, of a reasonable exemption."

The drafters had placed before them for their consideration the question of whether voluntary political, social, athletic, educational, religious or any other type of associations may limit access to. their facilities to less than "all persons"; they chose not to interfere with such organizations. Article II, section 17, does not prevent voluntary associations from limiting the use of their facilities and the sale of personal property.

The resolutions of the issues in favor of the defendants obviate the need to consider whether or not the Illinois Liquor Control Commission is a proper party.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA, J., concurs.

Mr. PRESIDING JUSTICE SIMON, dissenting:

The resolution of this appeal turns primarily on the interpretation of various provisions of the Illinois Liquor Control Act (Ill. Rev. Stat. 1973, ch. 43) (the Act) and section 17 of the Bill of Rights of the 1970 Illinois Constitution, the discrimination prohibition. At issue is whether the civil rights provision of the Act (section 12b) and the discrimination prohibition of the Constitution apply to the sale of liquor by clubs.

The following considerations are relevant in construing the Act. The energetic and far-ranging emphasis in recent years upon eliminating discrimination in our State and nation, based on a person's race, color, creed, national ancestry or sex, requires as a matter of public policy that our laws be construed to further that objective wherever possible. This principle of interpretation is supported by the Act itself, which directs that it is to be liberally construed to protect the health, safety and welfare of the people (section 1). In addition, this court has stressed that a strict or technical construction of any of the provisions of the Act detrimental to or inconsistent with the public interest should be avoided. (*Hassiepen v. Marcin* (1974), 24 Ill. App. 3d 97, 100, 320 N.E.2d 572.) Accordingly, elimination of discriminatory policies by liquor licensees is consistent with these directives.

The twenty-first amendment to the United States Constitution gives each State broad authority to regulate the distribution and sale of

alcoholic beverages. (*California v. La Rue* (1972), 409 U.S. 109, 114-15, 34 L. Ed. 2d 342, 349-50, 93 S. Ct. 390, 395.) A State, if it chooses, may require a club to adhere to racially nondiscriminatory membership policies as a condition of holding a State liquor license and selling liquor. (*B.P.O.E. Lodge 2043 v. Ingraham* (Me. 1972), 297 A.2d 607, *cert. denied*, 411 U.S. 924, 36 L. Ed. 2d 386, 93 S. Ct. 1893.) This is so even though the fourteenth amendment does not restrict a private club from discriminating on the basis of race in the sale of liquor. (*Moose Lodge No. 107 v. Irvis* (1972), 407 U.S. 163, 32 L. Ed. 2d 627, 92 S. Ct. 1965.) Thus, this State has the power to prevent a club from following discriminatory policies in selling liquor.

The civil rights provision of the Act prohibits discrimination on the basis of sex. In *Walton Playboy Clubs, Inc. v. City of Chicago* (1962), 37 Ill. App. 2d 425, 431, 185 N.E.2d 719, the court observed that statutes identical to the civil rights provision of the Act have been uniformly construed by reviewing courts of various jurisdictions to prohibit discrimination because of color, creed or race. The Illinois provision (section 12b) applies to "any person" and the word person encompasses women as well as men. (*People ex rel. Denny v. Traeger* (1939), 372 Ill. 11, 17, 22 N.E.2d 679.) Therefore, it is logical to extend the civil rights provision of the Act to discrimination based on sex as well as on color, creed or race. No defendant disputes such an interpretation of section 12b.[1]

Section 12b bars discrimination against members of any of the prohibited categories of persons except when "conditions and limitations established by law" excuse a liquor licensee from compliance. The only conditions or limitations established by the Act which expressly exempt licensees, including clubs, from compliance with the civil rights provision are those found in section 12, which prohibits sales to minors, intoxicated persons, habitual drunks, and incompetents. Throughout the Act, where exceptions from various statutory mandates are permitted for certain categories of licensees, including clubs, the exceptions are expressly stated. For example, section 8 expressly exempts clubs from the provision barring the sale of liquor within 100 feet of any church, school, or similar institution. Clubs, unlike most other licensees, are permitted by section 9 to maintain rooms for lodging with access to premises on which liquor is sold. Similarly, clubs are specifically excused from the Act's requirement that liquor not be sold at retail on credit (section 13). The Act's statutory scheme is to excuse licensees from complying with its various requirements only by express provision when such exceptions are

---

[1] Although the issue is not raised by this appeal, I also regard section 12b as prohibiting discrimination based upon a person's national ancestry. See Ill. Const. 1970, art. I., §17, and *Frontiero v. Richardson* (1973), 411 U.S. 677, 687, 36 L. Ed. 2d 583, 592, 93 S. Ct. 1764.

intended. But no provision of the Act expressly differentiates between "clubs" and other types of licensees in applying the civil rights provisions of the Act, or expressly exempts "clubs" from those requirements. Accordingly, exempting clubs from the obligation to comply with the civil rights paragraph should not be read into the Act.

The majority finds an exemption for clubs from the civil rights provision in section 2.24 of article I. I disagree. In construing that provision one must first turn to section 21 of the Act. Section 21 labels the provisions of section 2.24 as "qualifications," and provides that no person shall receive a license to sell alcoholic liquor on any premises as a club unless that club has the "qualifications" described in section 2.24. Section 2.24 defines a club as a not-for-profit corporation organized solely to promote some common object other than the sale or consumption of alcoholic liquors, with space suitable and adequate for the reasonable and comfortable use of its members and their guests. To qualify as a "club," the use of the organization's facilities must be limited to club members and their guests.[2]

I cannot justify construing section 2.24, which sets forth the "qualifications" for club status, as also giving clubs an exemption from any other provision of the Act, since the requirements for qualification as a club do not clearly contemplate such an exemption. Section 2.24 neither provides clubs with an exemption from the civil rights statute, nor recognizes that clubs have any right to discriminate against categories protected by section 12b either in membership policies or in acceptance of guests. While section 2.24 undeniably requires a club to restrict its patronage to members and their guests, this limitation does not authorize clubs to pursue discriminatory policies with regard to choice of members and invitation of guests based upon sex, race, color, creed or national ancestry. By setting forth the qualifications for recognition as a club, section 2.24 gives "club" an operational definition, and so makes the other express provisions of the Act which refer to clubs meaningful. In itself, it does not provide any exemptions from other provisions of the Act.

The majority appears to reason that the very use of the word "club," combined with the restriction on the use of club facilities to members and their guests, condones any sort of selectivity a club might wish to pursue in its membership or guest policies. Nothing in the word "club" justifies this conclusion, for selectivity is not synonymous with discrimination. The word "club" necessarily implies that the Act permits some sort of selectivity, and some exclusions; however, the word does not imply that all types of selectivity and all sorts of exclusions are countenanced by the Act. Therefore, while section 2.24 acknowledges that clubs may be

---

[2] The term "private club" has crept into some of the appellees' briefs. In fact, the word "private" never appears before "club" anywhere in the Illinois Liquor Control Act.

selective in their membership and guest policies, it does not acknowledge that all forms of selectivity or discrimination practiced by clubs are acceptable.

Further, in view of section 12b's sweeping limitation on the right of any licensee to discriminate against prohibited categories of persons in selling liquor, I see no justification for reading into the word "club" the right to ignore that expression of public policy or concluding that the use of the word "club" implies an inherent privilege to discriminate on the basis of race, creed, color, sex or national ancestry. The policy announced in the civil rights provision of the Act is salient and should not be diminished unnecessarily. This conclusion is particularly valid in view of the twin public policy considerations that the Act be liberally construed to protect the welfare of the people, and that strict or technical construction of provisions detrimental to or inconsistent with the public interest be avoided. (*Hassiepen.*) I therefore dispute the majority's conclusion that section 2.24 provides conditions or limitations established by law of the type contemplated by section 12b, which exempts clubs from complying with the antidiscrimination requirements of that paragraph. Nothing in section 2.24 permits the defendant club of which Charles Davis, one of the plaintiffs, is a member, to tell Mr. Davis he cannot bring to his club as a guest or propose for membership a person who is black, or Irish, or female, or Jewish, because the club pursues a policy of excluding such people.

Regardless of the meaning of section 2.24, section 12b permits exceptions to its provisions only if those exceptions are "applicable alike to all citizens." The exclusion of women as a class from membership or guest privileges in clubs is not a restriction "applicable alike to all citizens," and cannot qualify as an exception to section 12b. This is especially true given the magnitude of this particular exclusion which affects at least half the adult population of metropolitan Chicago.

The majority asserts that the plaintiffs have claimed the phrase "applicable alike to all citizens" should be interpreted to prohibit discrimination only on the basis of immutable characteristics such as sex, color or national origin. The majority therefore rejects the plaintiffs' plea to permit women access to the defendant clubs, apparently concluding that because the plaintiffs' brief improperly limited the scope of that phrase to exclude discrimination based on nonimmutable characteristics such as religion or creed, their entire argument was unworthy of consideration. This response is an unwarranted overreaction to the plaintiffs' argument. Although the plaintiffs are overzealous in asserting that the phrase is limited to immutable characteristics, they still correctly argue that the phrase "applicable alike to all citizens" was intended to prohibit discrimination on the basis of sex. Whatever the flaw in the

plaintiffs' specific argument, the fact remains that the general thrust of their reasoning is equally applicable to immutable and nonimmutable characteristics. Clearly, the meaning of the phrase "applicable alike to all citizens" should not be restricted simply because the plaintiffs contend that it entitles their group to more protection than other groups.

Further, the majority misinterprets the *Walton Playboy* case. The court there held that a $50 membership fee uniformly applied to all people regardless of their color, creed, birth or ancestry was not a type of discrimination prohibited by the civil rights provision of the Act. Indeed, the *Walton Playboy* court held that this financial barrier was "applicable alike to all citizens," since any person—male or female, black or white—could join if he had $50. Although *Walton Playboy* upholds exclusions based on financial ability, and the rationale of that case might be extended to permit exclusions based on other factors such as a person's dress or behavior, it cannot be construed to condone discrimination on the basis of sex or any of the other prohibited categories. On the contrary, the rationale of *Walton Playboy* is authority for striking down all discrimination on the basis of color, race, creed and sex rather than for upholding such discrimination.

In view of the lengthy analysis of the statutory and constitutional provisions by both the majority and this dissent, delving into the logic and basis of the detailed memorandum of the Illinois Liquor Control Commission in In re Chicago Club v. ILC, 73-74, CIT No. 116, or the rationale of the Maine Supreme Court in *B.P.O.E. Lodge*, which the Commission relied on in drafting its memorandum, would serve little purpose here. This is especially true because the Commission's interpretation, while a substantial factor to be considered in arriving at the meaning of the statute (*Youakim v. Miller* (1976), 425 U.S. 231, 235, 47 L. Ed. 2d 701, 706, 96 S. Ct. 1399, 1402; *First National Bank & Trust Co. v. City of Rockford* (1977), 47 Ill. App. 3d 131, 141, 361 N.E.2d 832) and an informed source for ascertaining the legislative intent (*Adams v. Jewel Companies, Inc.* (1976), 63 Ill. 2d 336, 344-45, 348 N.E.2d 161), is not binding upon this court. *First National Bank & Trust Co. v. City of Rockford; National Transportation, Inc. v. Howlett* (1976), 37 Ill. App. 3d 249, 255, 345 N.E.2d 767; *First Federal Savings & Loan Association v. Elbert* (1975), 33 Ill. App. 3d 335, 341, 337 N.E.2d 420.[3]

Nevertheless, despite the ambiguities in the Commission's memorandum pointed out by the majority, and the fact that the Maine case which the Commission cited in its memorandum was based partially

---

[3] Moreover, the Act has not had the long continued and consistent construction which *People ex rel. Watson v. House of Vision* (1974), 59 Ill. 2d 508, 514-15, 322 N.E.2d 15, states would make that construction of the Act only slightly less persuasive than a judicial construction. See also *Radio Relay Corp. v. Commerce Com.* (1977), 69 Ill. 2d 95, 370 N.E.2d 528.

on a differently worded statute than the one before us, the following conclusions were clearly stated by the Commission and they are entitled to consideration by this court. They also coincide with the interpretation I give the Act. First, the language of section 12b includes within its coverage every type of licensee, including clubs. Second, section 2.24 does not contain an exception, limitation or condition with respect to section 12b or any of the general provisions of the Act. Third, section 12b protects women. Fourth, the exclusion of women from enjoying the full and equal enjoyment of the accommodations of a club is a condition and limitation applicable to only part of the citizenry and is not "* * * applicable alike to all citizens."

In addition to violating section 12b of the Act, the defendant clubs' policies also conflict with section 17 of the Bill of Rights of the 1970 Illinois Constitution, which prohibits discrimination in the sale and rental of property. I agree with the majority that the word "property" as used in that article encompasses both real and personal property, including liquor. However, I do not agree that the report of the Bill of Rights Committee and the remarks of a single Committee member, Delegate Lewis Wilson, both stating that the Committee considered but did not adopt a proposal to forbid discrimination by voluntary associations, means that the constitutional prohibition does not apply to the defendant clubs. The Committee's failure to refer to voluntary associations in the provision that was adopted does not warrant the conclusion that voluntary associations were granted blanket permission to discriminate in the sale of personal property.

Neither the Committee report nor the remarks of Delegate Wilson indicate the specific nature of the proposal on voluntary associations which was presented to the Committee. Thus, it is quite possible that the Committee members and delegates were content to forego a provision relating to voluntary associations because they regarded the proposal which actually was adopted as sufficient to prohibit discrimination in the sale of property by clubs such as the defendants. In addition, when Delegate Wilson referred to the possibility of "truly private clubs" providing housing for their own members, he said this sort of discrimination would be a logical exemption for the legislature to grant under the authority the discrimination provision gives the legislature to allow reasonable exemptions. Delegate Wilson thereby clearly indicated that even housing offered by truly private clubs—whatever a truly private club might be—for their own membership fell within the constitutional prohibition, and could not be offered on a discriminatory basis without specific legislative exemption.[4] If, as the majority holds, clubs are exempt

---

[4] The defendants argue that even if they are covered by the constitutional provision, they have been exempted from compliance with it by the provisions of section 2.24 of the Act. A

from the prohibitions against discrimination in the sale of food and liquor because of Delegate Wilson's observations and the Committee report, does this not lead to the conclusion that no part of the discrimination prohibition applies to private clubs? This, in turn, would mean that the constitutional prohibition against discrimination in employment, also contained in section 17 of the Bill of Rights, would not apply to clubs. It is entirely illogical to interpret the discrimination prohibition to permit clubs to discriminate in employment policies while other employers are forbidden to do so.

The clear and simple words of the discrimination prohibition should not be obscured by the less precise statements of committees and delegates regarding provisions not adopted by the convention, particularly because in referring to what was not adopted the delegates could not anticipate that their remarks later would be seized upon to circumscribe the provision they did adopt. Whatever the deficiencies in the wording of the Act, the meaning of the Constitution is clear. There is no ambiguity in the language of the discrimination prohibition. The problem I find with the majority's conclusion is that it dilutes the plain meaning of the constitutional prohibition to permit the defendant clubs, which occupy a significant position in the business and civic life of metropolitan Chicago, to exist as enclaves of discrimination. As long as women as a class cannot be served liquor or food sold in the defendant clubs, they are not free from discrimination in the sale of personal property on the basis of sex. And, regardless of what practices the defendant clubs have pursued in the past, women are wrongfully being denied a freedom guaranteed by section 17 of the Bill of Rights of the State Constitution—a guarantee adopted, in the words of the chairman of the Bill of Rights Committee, "for the first hours of tomorrow." See E. Gertz, For the First Hours of Tomorrow: The New Illinois Bill of Rights (1972).

My interpretation of the Act does not infringe upon the right of associational freedom of the members of the defendant clubs. Section 12b of the Act regulates only the activities of liquor licensees with regard to the sale of liquor. The act does not prevent any club from being as arbitrary and discriminatory as it chooses to be, so long as it is not the holder of an Illinois liquor license. A State, as pointed out above, has the power to require licensees to adhere to nondiscriminatory policies as a condition of obtaining and keeping a State liquor license. See *Ingraham*.

Also, the right of associational freedom is designed primarily to protect freedom of speech and religion and the right to privacy in a political or

statute passed long prior to the adoption of the Constitution cannot realistically be regarded as providing an exemption from the constitutional prohibitions, especially because the Bill of Rights grants privileges which the transition schedule for the Constitution provides shall be only prospective, instead of retrospective. Ill. Const. 1970, Transition Schedule, par. 2.

religious context or in a marital relationship. (See *NAACP v. Alabama* (1958), 357 U.S. 449, 2 L. Ed. 2d 1488, 78 S. Ct. 1163; *Griswold v. Connecticut* (1965), 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678.) The defendant clubs are supported by memberships of more than 7,000 males. They exist in part to provide their members with dining and bar accommodations; to that extent, they serve the same function as restaurants. In many respects they serve as an important business facilitator, since business transactions frequently are discussed over the dining tables and at the bars of the defendant clubs. It would be naive to assume that a portion of the members do not either deduct their club bills as business expenses for income tax purposes or have an arrangement with their employers to pay those bills. Membership in the defendant clubs is a status symbol in the business and professional communities. Considering the important role of the defendant clubs in the business and professional activities of the Chicago metropolitan area, the application of the discrimination prohibition in the Illinois Constitution to their sale of food and liquor does not jeopardize any associational rights of their members guaranteed by the first amendment to the United States Constitution, or any right of privacy guaranteed by section 6 of the Bill of Rights of the Illinois Constitution.

My conclusion necessitates consideration of whether the Illinois Liquor Control Commission is a proper party to this suit. The Commission contends it should be dismissed as a defendant in this suit, arguing that a declaratory judgment cannot be rendered against it because it had no present duty to act. The Commission's analysis is incorrect.

First, the plaintiffs argue that section 12b presently prohibits the defendant clubs from holding liquor licenses, the Commission has a present duty to revoke their licenses, and by failing to revoke those licenses, the Commission has not fulfilled the responsibility delegated by section 12b to insure equal treatment for all Illinois citizens. That no court has ruled on the scope of section 12b in the context of this case does not mean that an actual controversy does not exist.

Second, the Commission's argument that it has no present duty to act begs the question. The plaintiffs contend that section 12b places a present duty on the Commission to revoke the clubs' licenses. They are not asserting that the Commission will in the future refuse to enforce section 12b, but rather that it is failing to fulfill a current duty. The plaintiffs allege this action was filed because the Commission did not meet its statutory duty to revoke licenses which still are effective. The Commission is, therefore, a proper party.

I would reverse and remand so that the extent of the discrimination practiced against women by the defendant clubs and the importance of those clubs in the business and professional pursuits of this community can be fully developed at trial.